FILED
05/05/2023
*Amy McGhee*
CLERK
Missoula County District Court
STATE OF MONTANA
By: Rebecca Santos
DV-32-2023-0000536-BF
Vannatta, Shane
1.00

**Jason A. Williams**
Datsopoulos, MacDonald & Lind, P.C.
201 W. Main Street, Suite 201
Missoula, MT 59802
Phone: (406) 728-0810
Fax:    (406) 543-0134
Email: jwilliams@dmllaw.com;
        agehr@dmllaw.com

*Attorney for Plaintiff*

### MONTANA FOURTH JUDICIAL DISTRICT COURT, MISSOULA COUNTY

| | |
|---|---|
| JOE FULFORD d/b/a FULFORD HOMES, LLC, | Dept. No. |
| Plaintiff, | Cause No. |
| vs. | **COMPLAINT, REQUEST FOR DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL** |
| Toby Hansen Agency, Inc. and Nautilus Insurance Group | |
| Defendants. | |

COME NOW Plaintiff JOE FULFORD d/b/a FULFORD HOMES, LLC (hereinafter collectively referred to as "Fulford"), and for their Complaint against the Defendants, state and allege as follows.

### JURISDICTION AND VENUE

1. At all times material herein, Plaintiff Fulford was a resident of Missoula County, Montana.

2. Upon information and belief, Nautilus Insurance Group (hereinafter "Nautilus") is an Arizona corporation with a listed address of 7233 E Butherus Dr, Scottsdale, AZ 85260

3. Nautilus has entered into contracts for insurance coverage for entities and companies providing goods and services to Montana entities and individuals.

4. Upon information and belief, Toby Hansen Agency, Inc. (hereinafter "Toby Hansen") has a registered agent address of 425 S 4th St W, Missoula, MT 59801.

5. Upon information and belief Toby Hansen is a registered business authorized to do business in the state of Montana.

## FACTS COMMON TO ALL COUNTS

6. On or about May 6, 2019, Fulford entered into a Sub-Contractor Agreement with MSO Construction who is third-party in this matter. See **Exhibit "A."**

7. Section VI of the Sub-Contractor Agreement states, "Commercial General Liability Policies shall name Fulford Homes as Additional Insured and shall provide specifically that such polices are primary and noncontributing with any other insurance cored or available to said Additional Insureds." See **Exhibit "A."**

8. To the best of Plaintiff's knowledge, third-party MSO utilized Toby Hansen to obtain appropriate insurance for the Sub-Contractor Agreement.

9. To the best of Plaintiff's knowledge, Toby Hansen obtained insurance through Nautilus to cover the Sub-Contractor Agreement.

10. Unfortunately, the project did not go as expected, and on May 19, 2020, notice was brought to Nautilus's attention.

11. No decision was made by Nautilus and additional communication and documentation about the claim was sent to them on June 26, 2020.

12. On July 9, 2020, Fulford first learned he was not included as Additional Insured as required under the Sub-Contractor Agreement. See **Exhibit "B."**

13. Moreover, Nautilus refused to provide a defense or indemnification of the case. See **Exhibit "B."**

14. To the best of Plaintiff's knowledge, the policy was listed as NC862602 with a date of coverage of 01/22/2019 to 01/22/2020.

15. At that time, Fulford was forced to defend the case himself and use his own insurance to pursue and rectify the issues with the project.

16. After various requests for indemnity and defense of the claim, Nautilus again denied the case on June 8, 2021. See **Exhibit "C."**

17. However, for reasons unknown, Nautilus changed Fulford's status to Additional Insured on June 8, 2021. See **Exhibit "C."**

18. In the letter sent June 8, 2021, both the NC862602 and NN1087368 policies are listed as being amended. The document even has a footnote on

page 2 that states: "the singular "policy" refers to all polices referenced in the caption unless specifically indicated otherwise." See **Exhibit "C."**

19. It was not until September 1, 2021, that Nautilus began to indemnify and defend Fulford in the suit. See **Exhibit "D."**

20. The letter stated its purpose was "to communicate its supplemental coverage position in this matter as it relates to the tender of defense **and indemnity** from your client, Fulford Homes, LLC." See **Exhibit "D."**

21. The letter did not refuse the claim but only issued a reservation of rights under the NN1087368 policy. See **Exhibit "D."**

22. The letter also clearly indicated that Fulford was an Additional Insured.

As referenced above, the 2020 Policy also includes an "Additional Insured – Designated Person or Organization" endorsement, written on form number CG 20 26 04 13 (the "AI Endorsement"), which states as follows:

**ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
| --- |
| Butler Creek Development, 4800 Grant Creek Rd, Missoula, MT, 59808 |
| Fulford Homes, 262 Jamie Ct, Missoula, MT, 59802 |
| Reed Mountain Construction, Inc, 1333 Juniper lane, Alberton, MT 59820 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations |

See **Exhibit "D."**

23. The caption listed the NC862602 and NN1087368 policies as subject to the indemnity but later indicated they would only provide coverage under the

2020 policy listed as NC862602. See **Exhibit "D."**

24. In addition, despite prior notice and previous requests to defend, Nautilus only provided coverage back to June, 2021. See **Exhibit "D."**

25. Nautilus then provided additional policy language that stated:

> **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**
>
> **1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

See **Exhibit "D."**

26. Fulford sent a request for reimbursement, but Nautilus denied this request and stated they required additional documentation, including information from Fulford's own insurance policy. See **Exhibit "E."**

27. Moreover, Fulford was party to a lawsuit that included Nautilus's insured MSO and there was concern that any documents conveyed to Nautilus could be used by them in the law suit between Fulford and MSO.

28. Again, Fulford attempted to get Nautilus to cover the entire defense as they had provided notice of the claim in May of 2020.

29. Nautilus again refused to reimburse Fulford for the entire defense of the case and asserted it would now only provide defense under the NN10187368 policy, contrary to what was indicated in the letter sent June 8, 2021.

30. On November 11, 2021, defense counsel provided by Nautilus requested

that information not be shared with the third-party MSO or other individuals at Nautilus. See **Exhibit "F."**

31. Nautilus agents indicated the matters would not be shared with policyholders or their agents. See **Exhibit "F."**

32. For reasons unknown, Nautilus did not believe that MSO was not a party to the suit despite the fact there was ongoing representation for the past year and a half. See **Exhibit "F."**

33. To the best of Fulford's understanding, as was communicated to him multiple times, Nautilus would have a separate file between Fulford's file and MSO, and there would be no sharing of information between the two.

34. All the parties to the underlying suit set up mediation for the case on or about February 10, 2022.

35. The night before mediation, Nautilus informed everyone they would not have any settlement money for Fulford as the only person with authority would be MSO, the third-party, as they only had the duty to defend. See **Exhibit "G."**

36. Despite their previous representations, Nautilus also claimed Fulford did not qualify as an Additional Insured. See **Exhibit "G."**

37. Montana law states that "[d]istinct from the duty to defend, an insurer has an express contract duty to indemnify the insured within policy limits for

covered losses." *Draggin' Y Cattle Co. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 2019 MT 97, ¶ 46, 395 Mont. 316, 340, 439 P.3d 935, 948.

38. The policy language of NN10187368 indicated Nautilus agreed to provide authority to investigate and settle the suit. See **Exhibit "D."** However, Nautilus refused to provide authority to settle the case on behalf of Fulford, and MSO was the only entity that had settlement authority.

39. The policy language of NN10187368 indicated that:

> **7. Separation Of Insureds**
> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
> **a.** As if each Named Insured were the only Named Insured; and
> **b.** Separately to each insured against whom claim is made or "suit" is brought.

See **Exhibit "D."**

40. This policy language indicates Fulford should be provided separate policy coverage as if each named insurance were the only named insured. See **Exhibit "D."**

41. Nautilus has agreed to provide authority to investigate and settle the suit. See **Exhibit "D."** However, Nautilus refused to provide authority to settle the case on behalf of Fulford and MSO was the only entity that had settlement authority.

42. Nautilus repeatedly indicated that they did not have separate authority for Fulford even though they listed him as an Additional Insured, which they have gone back and forth on. See **Exhibit "H."**

43. Nautilus also indicated the only person with settlement authority for Fulford was the adjuster for MSO. See **Exhibit XXXXXX."**

44. Nautilus has refused to fully reimburse Fulford for all the costs and fees associated with the case and his coverage.

45. As a result of the actions of the Defendants, Fulford has been and continues to experience damage.

## COUNT I – BAD FAITH

46. Fulford realleges all prior allegations in this Complaint as though the same were fully set forth herein.

47. Fulford's claim is being brought pursuant to Montana's Unfair Trade Practices Act §§ 33-18-201, et seq., and under the common law covenant of good faith and fair dealing.

48. At all times relevant hereto, Defendants, knowing that Fulford is an Additional Insured, have wrongfully and in breach of the implied covenant of good faith and fair dealing, withheld and denied full benefits due to Fulford. In denying this claim for full benefits, Defendant has acted wrongfully and unreasonably pursuant to Mont. Code Ann. § 33-18-201,

among others:

    a. Defendant has refused to pay claims without conducting a reasonable investigation based upon available information;

    b. Defendant has failed to follow through after information has been provided;

    c. Defendant has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of this claim where liability has become reasonably clear;

    d. Defendant has delayed the investigation or payment of claims by requiring an insured, claimant, or agent to provide additional information irrelevant to the claim or coverage;

    e. Defendant failed to compel insureds to institute and defend litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds;

    f. Defendant failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

    g. Defendant failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

h. Defendant failed to follow their own policies and procedures;

i. Defendant failed to maintain an independent file for Fulford; and

j. Defendant failed to have independent adjuster and authorization for indemnity of the case.

49. Nautilus also owed a common law duty of good faith and fair dealing to reasonably investigate the claim and engage in fair settlement negotiations with Fulford.

50. Defendant failed to handle or administer the claim appropriately.

51. Defendant is guilty of actual malice as defined in Mont. Code Ann. §§ 27-1-220 and 221 in that Defendant had firsthand knowledge that its failure to comply with the provisions of Mont. Code Ann. § 33-18-201 would create a high probability of injury to Fulford yet continued to act deliberately in conscious or intentional disregard of that probability of injury.

52. As a direct and proximate result of Defendant's conduct, Fulford has sustained substantial compensable losses, including benefits withheld, economic losses such as attorney's fees, loss of credit, interest on borrowed money, travel, and other incidental expenses, as well as mental and emotional distress and discomfort, all to Fulford's detriment and damage in amounts not fully ascertained but within the jurisdiction of this Court.

**COUNT II - REQUEST FOR DECLARATORY RELIEF**

53. Fulford restates and realleges each and every allegation contained in this Complaint as though fully set forth herein.

54. Count II of this Complaint is brought pursuant to Montana's Uniform Declaratory Judgment Act, Mont. Code Ann. § 27-8-101, et. seq.

55. Defendant originally denied Fulford's claim and said no coverage existed under the NC862602 2019 policy.

56. Nautilus later admitted that it was unclear when the accident or occurrence occurred.

57. Without additional information or application, Fulford was afforded Additional Insured coverage under the NN10187368 2020 policy.

58. Defendant Nautilus confirmed coverage for the 2020 policy under a reservation of rights.

59. The Subcontractor Agreement was clear that Fulford was to be named an Additional Insured from the date of execution of the Subcontractor Agreement.

60. Fulford provided Nautilus all necessary information related to the incident between MSO and Fulford.

61. Fulford has made multiple demands upon Defendant Nautilus for the reimbursement of bills relating to all defense of the case, but Nautilus has refused to reimburse Fulford for these costs.

62. Nautilus provided a defense of the claim for Fulford.

63. Nautilus failed to provide indemnity or separate authority to settle the case at issue in the case.

64. Fulford requests that pursuant to the Montana Declaratory Judgment Act, the Court orders Nautilus to meet its obligations and declare Fulford an Additional Insured under the original policy and reimburse Fulford for his costs and expenses related to the defense of his claim.

65. Fulford has provided Nautilus with full documentation of the lost wages and attorney fees that he has experienced.

66. Fulford requests that pursuant to the Montana Declaratory Judgment Act, the Court orders Nautilus to meet its obligations under Montana law regarding the payment of defense and indemnity of Fulford.

67. Fulford requests that pursuant to the Montana Declaratory Judgment Act, that Fulford be awarded full costs and expenses that he incurred in defense of the case.

68. Fulford requests that pursuant to the Montana Declaratory Judgment Act and the policy of the insurer they have an obligation and were required to provide separate indemnity and settlement authorization for the Plaintiff.

69. Fulford seeks all available remedies and damages, including but not limited to, reasonable attorneys' fees resulting from Nautilus's failure to make such

payments which required Fulford to defend and file suit to force Nautilus to meet its obligations under Montana law.

## COUNT III - NEGLIGENCE

70. Fulford restates and realleges each and every allegation contained in this Complaint as though fully set forth herein.

71. Toby Hansen had a duty to procure the appropriate insurance as indicated in the Subcontractor Agreement.

72. Pursuant to the Subcontractor Agreement, Fulford was supposed to be listed as an Additional Insured.

73. Under Montana law, it is "well established that an insurance agent owes an absolute duty to obtain the insurance coverage which an insured directs the agent to procure." *Bailey v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 20, 370 Mont. 73, 79, 300 P.3d 1149, 1153; *Monroe v. Cogswell Agency,* 2010 MT 134, ¶ 32, 356 Mont. 417, 234 P.3d 79; *Fillinger v. Northwestern Agency*, 283 Mont. 71, 83, 938 P.2d 1347, 1355 (1997); *Lee v. Andrews*, 204 Mont. 527, 532, 667 P.2d 919, 921 (1983); *Gay v. Lavina State Bank*, 61 Mont. 449, 458, 202 P. 753, 755 (1921).

74. Fulford was the intended beneficiary of the procurement of the appropriate insurance.

75. Toby Hansen breached his duty by failing to procure the appropriate

insurance status for Fulford.

76. Toby Hansen breached his duty by failing to notify the interested parties that Fulford was not set up as an Additional Insured.

77. As a result of Toby Hansen's breach of his duty, Fulford has suffered costs, attorney fees, loss of work, stress, anxiety and general damages.

WHEREFORE, Fulford prays for judgment as follows.

1. For judgment against Defendants;

2. For costs of filing suit;

3. An award of compensatory, consequential, and punitive damages against Nautilus and Toby Hansen;

4. For an award of attorney's fees, if an attorney is hired as allowed under Montana law; and

5. For such other and further relief as this Court deems proper and just.

**DEMAND FOR JURY TRIAL**

COME NOW Plaintiff Fulford and hereby demands a jury trial of all triable issues raised herein.

DATED this ____ day of May, 2023

DATSOPOULOS MACDONALD & LIND, PC

By: _____
   Jason A. Williams
   *Attorney for Plaintiff*

COMPLAINT, REQUEST FOR DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL                                    14



## SUBCONTRACTOR MASTER AGREEMENT

### I. Contract Parties

THIS SUBCONTRACTOR MASTER AGREEMENT ("Agreement") is made by and between Fulford Homes (hereinafter referred to as the "Contractor") of ~~2516 Riata, Missoula,~~ 262 Jamie Ct MT 59808: ICEC # 116142IC and _Dan Shapiro_ (hereinafter referred to as Missoula, MT the "Subcontractor") of _Missoula Concrete and Excavation_; License # _____ for work to be performed on various projects that the Contractor is managing.

_Property Locations at 8894 Custer and 897 Trinity in Missoula, MT 59808_

### II. Terms

This Agreement contains the basic terms for all projects between the Contractor and Subcontractor. A Subcontractor proposal signed by the Contractor during the term of this Master Agreement shall constitute a binding agreement under this Master Agreement, and Subcontractor acknowledges and agrees to be bound by all of the terms and provisions of this Master Agreement with respect to every Subcontractor proposal signed by the Contractor during the term of this Master Agreement wherein the Subcontractor's proposal is selected

Subcontractor acknowledges that a prime contract exists between Contractor and the Buyer. If any terms of the prime contract conflict with this contract, this contract shall govern. In the event of any conflict between the terms in this Agreement and other contractual agreements, the terms of this Agreement shall supersede unless specifically indicated as such in the other contractual agreement.

### III. Duration

This Agreement will remain in effect for one year from the date signed by the parties below unless earlier terminated pursuant to the provisions of this Agreement. If this Agreement is in full force one year from the execution of this Agreement, the parties may extend this Agreement on a year to year basis thereafter through a written extension of this Agreement. Any Subcontract Proposal accepted and entered into by and between the Contractor and the Subcontractor during the Term of this Agreement shall be subject to and bound by all of the terms and conditions set forth in this Agreement.

### IV. Time is of the Essence

Subcontractor acknowledges that the schedules in the applicable Scope of Work are essential to the Contractor and Contractor's Buyer's marketing, financing, development, leasing, occupancy and/or business and management plans and, therefore, time is of the essence in meeting such schedules. Subcontractor shall commence work on the date specified in the applicable Scope of Work, and shall carry out the work expeditiously so that the Guaranteed Completion Date specified on the applicable Scope of Work shall be achieved.

Subcontractor shall notify Contractor immediately of any necessary change to the schedule in the Scope of Work. Subcontractor shall not be responsible for delays in the completion of the work created by any unforeseen cause or causes beyond Subcontractor's


EXHIBIT
A

control. In the event of delay due to any such cause, Subcontractor shall be paid only for actual out of pocket costs occasioned by such delay, including standby costs which Contractor is entitled to and does recover from the Buyer.

### V. Job Award Process

Contractor will make the job documents available to the Subcontractor for review or give a substantially certain job description. The Subcontractor will provide Contractor with a written proposal detailing the costs, scope of work, and time frame for completion. The Subcontractor must provide the written proposal within _____ days before the Contractor will open the bidding to other individuals or entities. Any bid received after the _____ days may still be considered.

If the proposal by the Subcontractor is accepted, Contractor will provide a written notice of award to the Subcontractor. The terms and conditions set forth in this Master Subcontractor Agreement will apply and supersede any provision in the Subcontractor Proposal that is in conflict with these terms unless the written notice from the Contractor specifically states that it otherwise.

### VI. Insurance

Subcontractor shall at all times maintain in full force and effect insurance coverage in the amounts reasonably appropriate for the job. Subcontractor will maintain in full force and effect a worker's compensation insurance policy, vehicle insurance, and a comprehensive liability insurance policy and the policies shall be reasonably sufficient for the work performed. Subcontractor shall furnish certificates of insurance to the Contractor before commencing work on a project. The failure of Contractor to demand delivery of certificates hereunder shall not relieve Subcontractor of any obligation under this paragraph.

Commercial General Liability Policies shall name Fulford Homes as additional insureds and shall provide specifically that such policies are primary and noncontributing with any other insurance carried or available to said Additional Insureds. Certificates of insurance shall provide that the insurance will not be cancelled until the expiration date of at least thirty (30) days after written notice of such cancellation has been given to the Contractor.

### VII. License

If a license is required for the type of work that the Subcontractor is performing, the Subcontractor must be fully licensed at all times and shall at all times maintain said license(s) in good standing as required by state law.

### VIII. Performance

In the performance of this Agreement, Subcontractor agrees to abide by all present and future laws, codes, ordinances, rules or regulations of federal, state or municipal governments or instrumentality's having jurisdiction. Subcontractor shall obtain, at its sole cost and expense, and keep current all licenses, permits, tax stamps and other documents which are required by law, rule or regulation and which are necessary to perform the services herein, and shall deliver a copy of such licenses, permits or other documents to Contractor.

Subcontractor shall not assign any of its rights or delegate any of its obligations under this Agreement without the prior written consent of the Contractor, which consent may be granted or withheld in Contractor's sole discretion. In addition to the foregoing and in the event of any approved assignment of delegation, Subcontractor shall remain fully liable for the assignee's timely and full compliance with all of the terms and conditions of this Agreement. Any prohibited assignment or delegation shall be null and void. This Agreement may be assigned by Contractor and, upon delivery to Subcontractor of an executed duplicate original of such assignment document, Contractor named herein shall be relieved of all obligations thereafter accruing under this Agreement.

If the Subcontractor defaults or neglects to carry out the work in accordance with the Subcontract and fails within two working days after delivery of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may thereafter, without prejudice to any other remedy the Contractor may have, make good such deficiencies and may deduct the reasonable cost thereof from the payments then or thereafter due the Subcontractor.

The Subcontractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract. In the event Subcontractor allows debris to accumulate, Contractor may remove Subcontractor's debris and charge costs to Subcontractor. Subcontractor may not use Contractor's dumpster unless specifically agreed to in advance. The Subcontractor shall not be held responsible for unclean conditions caused by other contractors or subcontractors.

Subcontractor agrees not to participate in or encourage any cessation of services, which may occur as a result of a labor dispute. Should there be a work stoppage or shutdown which involves the participation of Subcontractor's personnel, Subcontractor agrees to take appropriate and prompt action to provide qualified personnel to perform the Subcontract services. In the event Subcontractor is unable to provide said personnel, Subcontractor agrees to reimburse Contractor for any expenses incurred by Contractor in providing said services, or, at Contractor's sole option, Contractor may offset such expense against monies currently owed to Subcontractor. Subcontractor agrees to take appropriate, prompt action to minimize delay by fully cooperating in every reasonable way to eliminate any work stoppage or the effect of any work stoppage.

The failure by Contractor to insist upon strict performance of any of the terms and conditions of this Agreement, or to exercise any option herein conferred in any one or more instances, shall not be considered to be a waiver or relinquishment of such performance by Subcontractor or rights of Contractor, and all terms and conditions shall remain in full force and effect.

### IX. Alternates

The Subcontractor shall not deviate from the requirements of the plans and specifications as to materials and equipment to be furnished, or the method of performing the work unless prior written approval has been obtained from the Contractor and/or the Owner. The Subcontractor warrants that any alternate equipment, material or method proposed by the Subcontractor will meet and achieve all performance standards established by the Subcontract and other related documents

### X. Indemnification

To the fullest extent permitted by law, Subcontractor shall defend and indemnify and hold harmless Contractor and Owner and their agents and employees from claims, demands, costs, attorney fees, causes of action and liabilities of every kind whatsoever arising out of or in connection with Subcontractor's work performed for Contractor. This defense and indemnity shall extend to claims occurring after the Subcontract is completed or terminated as well as while it is in force. The defense and indemnity shall apply regardless of any active and/or passive negligent act or omission of the Contractor, Architect, or Owner, or their agents or employees, but Subcontractor shall not be obligated to indemnify any party for claims arising from the sole gross negligence or willful misconduct of the Contractor or its agents or employees.

The defense and indemnity set forth in this section shall not be limited by any insurance requirements, or by any other provision of the Subcontract. All work done at a site or in preparing or delivering materials or equipment to the site shall be at the sole risk of Subcontractor until the work is accepted by Contractor.

In claims against any person or entity indemnified under this section by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, the indemnification obligation under this section shall not be limited by a limitation on the amount or type of damages,

compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

### XI. Payments

Subcontractor agrees to be paid in accordance with the terms and conditions set forth in

Contractor requires that all subcontractor projects have a retention hold back of 10%. Final retention will be held until after final inspection is received and work is 100% complete. Retention is not required on contracts with a total of less than $3,000.

Subcontractor shall pay all valid charges for labor and materials used on the work covered by the Subcontract. The subcontract price set forth in the Subcontractor's Proposal signed by the Contractor shall be deemed to be full compensation for all work and materials furnished by the Subcontractor whether or not specifically called for by the contract, plans, or specifications, and no additional compensation shall be paid to the Subcontractor unless a written Change Order is signed by the Contractor in advance, stating that the work is extra work and designating the amount to be paid for the extra work.

In the event there are changes proposed in the scope of work for which Subcontractor would seek additional compensation, the Subcontractor must give the Contractor written notice to that effect before the work or materials in question are furnished. Otherwise, it will be conclusively presumed that the Contractor and Subcontractor have agreed that such work or materials are within the scope of the original contract and that no additional compensation shall be paid.

In the event, Contractor pays for any extra work not previously authorized in writing, Subcontractor shall not assume that the requirement for pre-authorization of changes by the Contractor has been waived, nor that a precedent has been established that Subcontractor will be paid in the future for any other unauthorized changes.

### XII. Billing

Subcontractor shall submit, in writing, a schedule of values and terms acceptable to Contractor before beginning work. Upon authorization by the Contractor, Subcontractor shall proceed to order and obtain materials and perform work. Subcontractor shall submit an invoice to Contractor's office by the 25th of each month and must be dated through the work completed each month per the schedule of values. Contractor shall pay the amount it approves by the 10th day of the following month. Contractor shall condition payment on receipt of a conditional lien and claim release for the work performed to that date. If Subcontractor invoices more than the work completed to date, then the invoice will be returned for the Subcontractor to revise the bill and may result in a delay in payment. Invoices must include Contractor's job number on all Subcontractor's invoices in order to be processed (refer to the signed proposal or contact a Contractor for job number).

It is Contractor's policy to require joint checks or lien releases from your suppliers on jobs in which a preliminary lien notice has been filed by Subcontractor's supplier(s). If Subcontractor does not want a check to be joint with the supplier, then Subcontractor is responsible for providing the appropriate unconditional lien release from Subcontractor's supplier(s) at the end of each month's billing cycle. In addition, before final retention is paid an unconditional final lien release must be received in the Contractor's office by the Subcontractor's supplier(s).

Contractor shall pay subcontractor in monthly installments based on percent complete with ten-percent retention held until final inspection is received (holding of 10% retention is not required on contracts with a total of less than $3,000). Monthly installments will be made within 30-45 days of the invoice date unless the payment policies of the owner/tenant are stated differently. Retention will be due within 60 days of final inspection. No payments will be made

until the requested insurance and contractor information is received.

### XIII. Termination of Agreement

If Subcontractor does not maintain the schedule of work, make prompt payment of its job-related obligations, correct faulty or defective work, disregards the law, ordinances, rules, regulations, or orders of any public authority having jurisdiction, files for bankruptcy, or breaches this agreement, then Contractor, without prejudice to any rights or remedies otherwise available to it, shall have the right, with 24 hours notice to Subcontractor, to remedy the breach for the Subcontractor, or terminate Subcontractor's performance and complete Subcontractor's work using whatever means Contractor deems prudent. All of the costs, including reasonable overhead, profit and attorneys' fees, incurred by Contractor shall be charged to Subcontractor. Contractor may deduct such costs from monies due Subcontractor, who shall be liable for all amounts in excess of the unpaid balance of the subcontract price.

Contractor may terminate a Subcontract for cause or convenience for any reason, at any time, in which case Subcontractor shall submit a final invoice for the work completed to the date of termination. If Contractor terminates the Subcontractor's services, all costs incurred by the Subcontractor to date for that portion of work reduced, or eliminated, shall be compensated, but Subcontractor shall not receive any profit for the reduced or eliminated work, unless otherwise agreed to in the Project Subcontract.

If the unpaid balance of the Subcontract sum exceeds the expense of finishing the Subcontractor's work and other damages incurred by the Contractor and not expressly waived, such excess shall be paid to the Subcontractor. If such expense and damages exceed such unpaid balance, the Subcontractor shall pay the difference to the Contractor.

If the Contractor or the Subcontractor should become bankrupt or make an assignment for the benefit of creditors, the Subcontractor, its trustee in bankruptcy, shall be paid the reasonable value of all work theretofore performed, and the obligations of all parties under the Subcontract shall thereupon terminate

### XIV. Dispute Resolution

Any controversy or claim arising out of, or relating to this Agreement must be sought to be settled by a consultation between Buyer, Contractor, and Subcontractor. Failing resolution by such consultation, settlement shall be attempted through mediation by a neutral person acceptable to both parties. If no resolution is reached by mediation, matters in controversy or claims shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, or another alternate dispute resolution organization agreed to by the parties. Judgment upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction.

### XV. Attorney Fees

If either party becomes involved in litigation arising out of the Subcontract or the performance thereof, the court in such litigation, or in a separate suit, shall award reasonable attorney fees to the prevailing party.

### XVI. Miscellaneous

This Agreement contains the entire Agreement between Contractor and Subcontractor with respect to the subject matter hereof and supersedes all prior discussions, negotiations and agreements between Contractor and Subcontractor, whether written or oral, and Contractor and Subcontractor agree that there are no other oral or written agreements or representations between Contractor and Subcontractor with respect to the Services. This Agreement may not be modified or amended unless such modification or amendment is in writing and duly executed by both

Contractor and Subcontractor.

This Agreement shall be governed by and construed in accordance with the laws of the State of Montana. The proper venue for interpreting this Agreement shall be Missoula County, Montana.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute one and the same instrument. The signature page of any counterpart may be attached there from without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Agreement attached thereto.

Wherever possible, each provision of this Agreement shall be interpreted in such a manner to be valid under applicable law, but, if any provisions of this Agreement shall be invalid or prohibited thereunder, such validity or prohibition shall be construed as if such invalid or prohibited provisions had not been inserted herein and shall not affect the remainder of such provision or the remaining provisions of this Agreement.

The language in all parts of this Agreement shall in all cases be construed simply according to its fair meaning and not strictly for or against any of the parties hereto.

Section headings of the Agreement are solely for convenience of reference and shall not govern the interpretation of any of the provisions of this Agreement.

We, the undersigned have read, understood, and agree to each of the provisions of this contract and hereby acknowledge receipt of a copy of this contract.


_____        5/4/2019
Joe Fulford,                      Date

Fulford Homes



_____        5/6/2019
Company                          Date

_____        Owner
Signature                        Title


Page 7 of 8



NAUTILUS
INSURANCE GROUP
i a Berkley Company

T | 800.842.8972
F | 480.951.9730

July 9, 2020

Mr. Jason Williams
Datsopoulos MacDonald & Lind PC
201 W Main Street, Suite 201
Missoula MT 59802

RE:   Company:              Nautilus Insurance Company
      Claim Number:         N000010109364 and N000010109365
      Named Insured:        MSO Construction LLC
      Claimant:             unknown
      Date of Accident:     May 2019 to December 2019
      Tendering Party:      Fulford Homes
      Policy Number         NC862602
      Period:               01/22/19 – 01/22/20

Dear Mr. Williams:

Nautilus Insurance Company is the liability carrier for MSO Construction LLC (MSO) with regard to the
above captioned policy and claims. Nautilus Insurance Company is in receipt of your email dated June 26,
2020. You have alleged your client Fulford Homes (Fulford) is entitled to additional insured status on
MSO's policy with Nautilus, based on the wording in the contract between MSO Construction LLC and
Fulford Homes. You also refer to an indemnification agreement in the contract that "is not subject to any
insurance requirements."

MSO was hired by Fulford to perform excavation and concrete work on two single-family residences in
Missoula, Montana.

For the reasons outlined herein Nautilus Insurance Company rejects the tender and will not be providing
defense or indemnification to Fulford.

Please be advised that Nautilus Insurance Company issued its policy of insurance to MSO Construction LLC
for policy NC862302 with a policy period of January 22, 2019 to January 22, 2020.

This policy does not name Fulford as an insured or as an additional insured. Further, the policy does not
include a blanket additional insured endorsement, and Fulford does not qualify as an insured under the
policy's provisions entitled "WHO IS AN INSURED". Thus, Fulford does not qualify as an insured on
policy NC862602.

To the extent your tender is for contractual indemnification, we refer you to portions of the Nautilus policy.
The policy includes Form CG 00 01 (04/13), "Commercial General Liability Coverage Form", under
"Coverage A. Bodily Injury and Property Damage Liability", which reads in part:

**"SECTION I - COVERAGES**
**COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

7233 East Butherus Drive, Scottsdale, Arizona 85260

EXHIBIT
B

Mr. Jason Williams
Datsopoulos MacDonald & Lind PC
N000010109364 and N000010109365
July 9, 2020
Page 2 of 5

1.    **Insuring Agreement.**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2)    The "bodily injury" or "property damage" occurs during the policy period.

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period."

In the policy form CG 00 01 (04/13) Commercial General Liability Coverage form, we now draw your attention to the exclusions referenced under Coverage A which state:

**2. Exclusions**

This insurance does not apply to:

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged. ..."

The policy contains the following endorsement L216 (04/16) Amendment of Definitions Insured Contract, which states:

Mr. Jason Williams
Datsopoulos MacDonald & Lind PC
N000010109364 and N000010109365
July 9, 2020
Page 3 of 5

## AMENDMENT OF DEFINITIONS - INSURED CONTRACT
### (Incidental Contracts)

The definition of "insured contract" in the **Definitions** section is **replaced** by the following:

"Insured contract" means any written:

**a.** Contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" to premises while rented or loaned to you, or temporarily occupied by you with permission of the owner, is not an "insured contract";

**b.** Sidetrack agreement;

**c.** Easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** Obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** Elevator maintenance agreement; or

**f.** Part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**b.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(1)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs, drawings, or specifications; or

   **(2)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**c.** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **b.(1)** or **b.(2)** above and supervisory, inspection, architectural or engineering activities; or

**d.** That indemnifies any person or organization for "bodily injury" or "property damage" arising from the ownership, maintenance, or use of any aircraft.

Please be advised that any duty owed by the named insured under the contract does not confer any direct rights upon the tendering parties under the policy. Nautilus Insurance Company is not a party to the contract between MSO and Fulford. While the policy does provide MSO with coverage for "insured contracts" subject to the terms, definitions, and conditions of the policy, this obligation is one owed to the named inured and not the contracting party.

There is no coverage for the named insured's failure to fulfill the terms of a contract. Further, Nautilus has disclaimed coverage to its insured MSO for the above-referenced claims.

Mr. Jason Williams
Datsopoulos MacDonald & Lind PC
N000010109364 and N000010109365
July 9, 2020
Page 4 of 5

At this time, we therefore must respectfully reject your request for additional insured status for Fulford Homes under the MSO Construction policy and your request for the contractual liability coverage sought against MSO.

The information contained in this correspondence is based on information and investigation we have gathered to date. Such information and investigation will not waive or set aside any of the terms or conditions of the policy issued to the named insured, or any other insured claiming coverage in the above referenced matter. Nor will such review and evaluation of information or additional information, or material provided or obtained from any source, waive, or set aside any policy conditions or positions taken in this letter or any other correspondence from Nautilus Insurance Company on this claim.

Nautilus Insurance Company's tender denial is based upon facts currently known and is made without prejudice to the rights and defenses per the terms, conditions, exclusions and limitations of the policy, all such rights and defenses being herein and presently reserved. Nautilus does not admit liability for coverage of said claims but, rather, specifically denies coverage and/or reserves its rights to contest and/or deny coverage for all claims asserted in this case under the terms, conditions, exclusions, limitations or restrictions of the Policy or any applicable laws, codes or regulations. The Company, in fact, reserves its right to apply any such defenses to coverage pursuant to the policies, laws, codes or regulations.

Nautilus Insurance Company reserves the right to bring an action in an appropriate state or federal court of competent jurisdiction and venue in order to limit, obtain a declaration, or interplead, to enforce the limitations mentioned herein and declare the obligations and responsibilities of the parties hereto under the contract of insurance. Nautilus Insurance Company, by this letter and by its continued investigation, does not waive nor invalidate any of the other terms, conditions or exclusions of the policy. We specifically reserve the right to exercise any of the other terms, conditions or exclusions, which now exist or may later become apparent.

Privacy throughout the claim process is very important to us. To learn more about our privacy policies including how we collect, use and share information, please visit www.nautilusinsgroup.com and click the "Privacy Policies" tab at the bottom of the page. Our Notice of Personal Information Collected per California's CCPA can be viewed at http://www.nautilusinsgroup.com/claimscalifornia.pdf. If you wish to receive a paper copy of our privacy policies and notice, please contact 480-509-6627.

Should there be any changes in the facts or circumstances of this matter, or should any additional information arise that suggests we should reconsider our position, please forward all pertinent information and documentation to the undersigned for review and consideration. If you have any questions or wish to discuss the content of this letter or the tender, please feel free to contact me at (800) 842-8972 ext. 4806638.

Sincerely,

*Matt Roberson*

Matt Roberson, Claims Examiner II
Nautilus Insurance Group on behalf of Nautilus Insurance Company

Mr. Jason Williams
Datsopoulos MacDonald & Lind PC
N000010109364 and N000010109365
July 9, 2020
Page 5 of 5

Email:  mroberson@nautilus-ins.com
Direct Fax: 480-281-0805

cc:     MSO Construction LLC, via email: mark@mtconcreteexcavation.com

        MSO Construction LLC, via email: david@mtconcreteexcavation.com

        Hull, Big Sky Underwriters-Missoula, via email: mindy@bsumt.com

        Toby Hansen Agency, Inc, via email: thansen@thansenagency.com



**NAUTILUS**
INSURANCE GROUP
| a Berkley Company

T | 800.842.8972
F | 480.951.9730

June 8, 2021

FIRST CLASS MAIL & CERTIFIED-RETURN RECEIPT - CLAIM #N000010109364

Datsopoulos, MacDonald & Lind PC
Attn. Jason Williams
201 W Main St. Ste 201
Missoula, MT 59802

RE:  Company:            Nautilus Insurance Company
     Claim Number:       N000010109364
     Named Insured:      MSO Construction LLC
     Cross Defendant:    Fulford Homes
     Tendering Party:    Fulford Homes
     Policies:           NC862602 (01/22/2019 to 01/22/2020)
                         NN1087368 (01/22/2020 to 01/22/2021)

Dear Mr. Williams:

Nautilus Insurance Company ("Nautilus") acknowledges receipt of correspondence dated June 3, 2021 requesting defense and indemnity of Fulford Homes pursuant to contractual obligations with respect to the above-captioned claim.

Nautilus also acknowledges receipt of the Complaint styled: *MSO Construction LLC v. Joe Fulford dba Fulford Homes LLC, Nathan and Jody Haines*; Cause No. DV-20-887; pending in the Court of Montana 4th Judicial District Court Missoula County.

Fulford Homes filed a Counterclaim against MSO Construction LLC in this matter (the "Fulford Homes Counterclaim"). According to Fulford Homes Counterclaim, on or around May 6, 2019, Fulford Homes and Plaintiff (MSO Construction LLC) entered into a contract containing the basic terms and type of work to be performed on two building projects in Missoula County. One of the building projects was a single family residential home, located at 897 Trinity Road, Missoula, MT.

Plaintiff was contracted to perform excavation and foundation construction work on the residential home. Plaintiff began work during the month following the contract date. Fulford Homes inspected the home, which revealed multiple structural and aesthetic defects in the work Plaintiff performed on the home. These defects included, but are not limited to improper compaction around footings, variable heights, dips and slopes in the foundation, wrong size of slab pour, exposed rebar and concrete splatters in and around the home.

As a result of these defects, Fulford Homes took efforts to correct or cure the defects caused by the Plaintiff's work. The Fulford Homes Counterclaim asserts causes of action including Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing and Negligence.


EXHIBIT
C

Nathan and Jody Haines also filed a Counterclaim against MSO Construction LLC (the "Haines Counterclaim"). According to the Haines Counterclaim, the Haines entered into a contract with Fulford Homes in the amount of $338,214, plus the cost of any written change orders. At Fulford Homes' request and/or with Fulford Homes' knowledge and agreement, the Haines directly paid for certain items originally included in the contract price. This includes, but is not limited to, the well pump. Fulford Homes failed to reduce the contract price by the amounts paid by the Haines directly.

Fulford Homes failed to provide components of the project included in the contractual scope of work, including but not limited to patios and sidewalks. Likewise, Fulford Homes charged additional amounts for items already included in the scope of work, such as the deck.

The Haines allege numerous defects to their home caused by Fulford Homes and MSO Construction including improper and defective backfilling and compaction around the perimeter of the home, defective grading, concrete work, septic, plumbing, venting, electrical work, improper placed doors and missing shelving in the downstairs bedroom.

The Haines Counterclaim asserts causes of action including Negligence against Fulford Homes and MSO Construction and violation of §70-19-426, MCA, et seq..

**For the reasons outlined below, and to the extent that your tender is directed to us, your tender is denied.**

We issued the policy[1] of insurance to MSO Construction LLC as captioned above.

The policy incorporates Form CG 20 26 (04/13), a copy of which is incorporated immediately below herein:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): |
| --- |
| Fulford Homes LLC<br>262 Jamie Ct.<br>Missoula, MT 59802 |

---

[1] The singular "policy" refers to all policies referenced in the caption unless specifically indicated otherwise.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

As you can see, the policy only extends additional insured status with respect to liability caused in whole or in part by the acts or omissions of the named insured, or those acting on its behalf, in the performance of ongoing operations by the named insured.

At this time, available information does not indicate that the damages at issue in this matter were caused in whole or in part by the named insured or anyone acting on its behalf. Further, the information provided does not confirm that any damage occurred in the course of the named insured's ongoing operations for Fulford Homes as is required to confer additional insured coverage pursuant to the above.

Therefore, to the extent your tender seeks insured or additional insured status, it is denied.

Regarding any claim for contractual indemnity, please be advised that any duty owed by the named insured under a contract does not confer any direct rights upon a tendering party under the policy. While the policy does provide the named insured with coverage for "insured contracts", subject to the terms, definitions, and conditions of the policy, this obligation is one owed to the named insured and not the contracting party. In any event, there is no coverage for the named insured's failure to fulfill the terms of a contract.

We also wish to point out that until such time as a determination is made by a court or agreement has been reached amongst the parties and us that the contract on which you are relying is valid, provides for both a duty to defend and to indemnify, was in effect when the injury or damage occurred, and encompasses the claim made in this matter, we reject any obligation to provide indemnification to the named insured for any contractual liability alleged to have been incurred by the named insured.

Finally, coverage under the policy for the defense of indemnitees of an insured is conditioned upon satisfaction of the terms of the policy's Supplementary Payments provisions, which include, but are not limited to, the conditions that there is an applicable "insured contract", the insured and

Datsopoulos, MacDonald & Lind PC
N000010109364
Page 4 of 5

indemnitee are parties to the suit, and there is no conflict between the interests of the insured and the interests of the indemnitee. In this case, the policy's Supplementary Payments provisions are not triggered.

Accordingly, at this time, we reject any request for defense or indemnification pursuant to a contractual liability theory.

This tender denial is based upon currently known facts and is made without prejudice to our rights and defenses pursuant to the terms, conditions, exclusions and limitations of the policy. All such rights and defenses are hereby reserved. Moreover, we do not admit liability for coverage of this matter and, rather, specifically deny coverage and/or reserve our rights to contest and/or deny coverage for all claims asserted under the terms, conditions, exclusions, and limitations in the policy or any applicable laws, codes or regulations.

Your privacy throughout the claim process is very important to us. To learn more about our privacy policies including how we collect, use and share information, please visit www.nautilusinsgroup.com and click the "Privacy Policies" tab at the bottom of the page. Our Notice of Personal Information Collected per California's CCPA can be viewed at http://www.nautilusinsgroup.com/claimscalifornia.pdf. If you wish to receive a paper copy of our privacy policies and notice, please contact 480-509-6627.

Should there be any changes in the facts or circumstances of this matter, or should any additional information arise that suggests we should reconsider our position, please forward all pertinent information and documentation to the undersigned for review and consideration. If you have any questions or wish to discuss the content of this letter or the tender, please feel free to contact me at (800) 842-8972 ext. 4806731.

Sincerely,

Matt Stein, Sr. Claims Examiner
Nautilus Insurance Group on behalf of Nautilus Insurance Company
Email: mastein@nautilus-ins.com
Direct Fax: 480-477-4478

cc:    MSO Construction LLC
       ATTN: Mark Ferdinand
       1930 Mullan Trail
       Missoula, MT  59808

       Gangle Law Firm PC
       Attn. Cory Gangle Esq.
       Po Box 16356
       Missoula, MT 59808

7233 East Butherus Drive
Scottsdale, Arizona 85260
800.842.8972

Page 4 of 5
a W. R. Berkley Company

nautilusagents.com
m.nautilusagents.com

Datsopoulos, MacDonald & Lind PC
N000010109364
Page 5 of 5

Kaufman Vidal Hileman Ellingson, P.C.
Attn. Shelly Brander
22 Second Avenue West, Suite 4000
Kalispell, MT 59901

7233 East Butherus Drive
Scottsdale, Arizona 85260
800.842.8972

Page 5 of 5
a W. R. Berkley Company

nautilusagents.com
m.nautilusagents.com



**SELMAN**

SELMAN BREITMAN LLP

33 New Montgomery, Sixth Floor
San Francisco, CA 94105-4537
Telephone: 415.979.0400
Facsimile:  415.979.2099
www.selmanlaw.com

Linda Wendell Hsu
415.979.2024
lhsu@selmanlaw.com

September 1, 2021

**Via Email: jwilliams@dmllaw.com**

Mr. Jason A. Williams
Datsopoulos, MacDonald & Lind, P.C.
Central Square Building
201 W. Main Street, Suite 201
Missoula, MT 59802

Re:     *MSO Construction LLC v. Fulford Homes, et al.*

| | | |
|---|---|---|
| Court & Case No. | : | Missoula County, Montana, Case No. DV-32-2020-000087-BC |
| Our File No. | : | 3891.100751 |
| Insured | : | MSO Construction LLC |
| Date of Loss | : | 10/29/2019 |
| Claim No. | : | N000010109364 |
| Policy Nos. | : | NC862602 (January 22, 2019 – January 22, 2020) |
| | | NN1087368 (January 22, 2020 – January 22, 2021) |

Dear Mr. Williams:

As you know, our firm has been retained as coverage counsel for Nautilus Insurance Company ("Nautilus") as it pertains to the above-referenced action. Nautilus has asked us to communicate its supplemental coverage position in this matter as it relates to the tender of defense and indemnity from your client, Fulford Homes, LLC ("Fulford").

On July 9, 2020, Nautilus provided you with correspondence advising that it was rejecting Fulford's request for contractual liability coverage sought against Nautilus's named insured, MSO Construction LLC (the "Insured" or "MSO") (the "July 2020 Letter"). Subsequently, you sent correspondence to MSO's counsel requesting defense and indemnification from MSO as it relates to claims brought by Nathan and Jody Haines (the "Haineses"). On June 8, 2021, Nautilus provided you with correspondence (the "June 2021 Letter") advising that, at that time, Nautilus was rejecting any request for defense or indemnification pursuant to a contractual liability theory, under the above-referenced policies, as it related to the cross claim filed against Fulford by the Haineses (the "Haines Cross Claim"). In the June 2021 Letter, Nautilus also advised that its coverage position could be reconsidered. The purpose of this correspondence is to provide Fulford with Nautilus's supplemental coverage position as it relates to Fulford's tender of defense of the Haines Cross Claim.

Based on the allegations of the Haines Cross Claim, the terms of the policies, and Montana law, Nautilus will agree to defend Fulford in this matter under a full and complete reservation of rights

Los Angeles   •   San Francisco   •   Orange County   •   San Diego   •   Las Vegas   •   Seattle   •   Portla



EXHIBIT

D



**SELMAN**

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 2

as discussed below. Nautilus will also agree to reimburse Fulford for defense costs incurred, **only as it relates to the defense of the Haines Cross Claim**, from the date of the June 2021 Letter to present. <u>To the extent that Fulford incurred defense costs during this timeframe, please provide me with the invoice(s) documenting these costs as soon as possible.</u> Upon receipt, I will forward the same to Nautilus for review.

Please note that the coverage positions set forth below are not meant to be exclusive, and Nautilus does not waive or relinquish any defenses to coverage available to it that may exist under the terms, provisions, conditions, limitations, restrictions, or exclusions of its policies or any applicable laws, codes, or regulations. The facts underlying this matter are subject to dispute. Nautilus specifically reserves the right to decline to provide Fulford with indemnity coverage, and to withdraw from the defense of Fulford and/or seek reimbursement of defense fees and costs it pays to the extent allowed by Montana law should it be determined that there is no coverage for this claim.

## 1.    RELEVANT FACTUAL / PROCEDURAL BACKGROUND

### a.    The Subcontractor Agreement

On or about May 6, 2019, MSO and Fulford entered into a Subcontractor Master Agreement (the "Subcontractor Agreement"), wherein MSO agreed to provide subcontractor services for work to be performed on various projects, including projects at the property located at 897 Trinity Road, in Missoula, Montana. The Subcontractor Agreement states as follows, in relevant part:

**III.    Duration**

This Agreement will remain in effect for one year from the date signed by the parties below unless earlier terminated pursuant to the provisions of this Agreement. If this Agreement is in full force for one year from the execution of this Agreement, the parties may extend this Agreement on a year to year basis thereafter through a written extension of this Agreement. Any Subcontract Proposal accepted and entered into by and between the Contractor and the Subcontractor during the Term of this Agreement shall be subject to and bound by all of the terms and conditions set forth in this Agreement.

...

**VI.    Insurance**

Subcontractor shall at all times maintain in full force and effect insurance coverage in the amounts reasonably appropriate for the job. **Subcontractor will maintain in full force and effect...a comprehensive liability insurance policy and the policies shall be reasonably sufficient for the work performed**. Subcontractor shall furnish certificate of insurance to the Contractor before commencing work on a project. The failure of Contractor to demand delivery of certificates hereunder shall not relieve Subcontractor of any obligation under this paragraph.



**SELMAN BREITMAN LLP**

Mr. Jason A. Williams
September 1, 2021
Page 3

>**Commercial General Liability Policies shall name Fulford Homes as additional insureds** and shall provide specifically that such policies are primary and noncontributing with any other insurance carried or available to said Additional Insureds. Certificates of insurance shall provide that the insurance will not be cancelled until the expiration date of at least thirty (30) days after written notice of such cancellation has been given to the Contractor.

...

**X.    Indemnification**

>To the fullest extent permitted by law, Subcontractor shall defend and indemnify and hold harmless Contractor and Owner and their agents and employees from claims, demands, costs, attorney fees, causes of action and liabilities of every kind whatsoever **arising out of or in connection with Subcontractor's work performed for Contractor**. This defense and indemnity shall extend to claims occurring after the Subcontract is completed or terminated as well as while it is in force. The defense and indemnity shall apply regardless of any active and/or passive negligent act or omission of the Contractor, Architect, or Owner, or their agents or employees, **but Subcontractor shall not be obligated to indemnify any party for claims arising from the sole gross negligence or willful misconduct of the Contractor or its agents or employees**.

>The defense and indemnity set forth in this section shall not be limited by any insurance requirements, or by any other provision of the Subcontract. All work done at a site or in preparing or delivering materials or equipment to the site shall be at the sole risk of Subcontractor until the work is accepted by Contractor.

>(emphasis added)

**b.    The Haines Cross Claim**

Nautilus understands that the allegations in the Haines Cross Claim may not be true and are being contested. Nautilus recites the allegations in the Haines Cross Claim in order to explain its coverage position.

On or about April 14, 2021, the Haines Cross Claim was filed against Fulford.[1] The Haines Cross Claim alleges that Fulford entered into a contract with the Haineses for the construction of a home, wherein Fulford agreed to provide all labor, materials, equipment, tools, and other services to construct the house, for a total price of $338,213, plus the cost of any written change orders. The Haineses allege that Fulford failed to reduce the contract price for items paid for by the Haineses that were included in the contract price.

---

[1] This pleading also includes the Haineses' counterclaim against MSO.



SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 4

The Haineses further allege that Fulford failed to provide components of the project included in the contractual scope of work, provided unreasonable and impractical estimates, failed to secure the final occupancy permit, failed to correct any items on the Haineses' punch list, and failed to repair deficient items (or offset the contract price accordingly). Furthermore, the Haines Cross Claim specifically alleges the following defects:

- "Improper and defective backfilling and compaction around the perimeter of the home."

- "Improper and defective grading which resulted in the necessity of installing two large retaining walls."

- "Improper and defective concrete work, including the uneven nature of the concrete slab in the basement and cracking. Due to the unevenness of the concrete, walls were out of plumb and not square, causing additional construction costs. The Haines will also incur substantial future costs to level the uneven and cracked concrete flooring."

- "Defective septic, plumbing, and venting causing nuisance sewer odors around [the] exterior and interior of the house."

- "The sliding doors were installed in the wrong location, resulting in doors which open the wrong way."

- "Improper installation of the Trex decking, resulting in uneven and wavey surface."

- "Improper construction of shelving in the laundry area, resulting in the laundry chute being ineffective."

- "Improper installation of siding including but not limited to gaps, loose and bowed siding, and uneven cuts."

- "Electrical wire hanging loosely on exterior of the house."

- "Tongue and groove boards not stained prior to installation."

- "Plumbing leaks in master bathroom sink causing damage to cabinet."

- "Missing shelving in downstairs bedroom."

The Haineses also contend as follows, specifically pertaining to Fulford:

Fulford Homes further deviated from the plans and specifications, without securing the Haines' prior approval. The construction of the home and rooflines are not congruent to plans, including but not limited to: (a) exterior front entryway; (b) the height of the main house versus the garage; and (c) the height of the interior entryway and main floor living room. Fulford Homes unilaterally selected and ordered roof trusses for the home which deviated from the agreed-to plans and



**SELMAN**

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 5

      specifications, and substantially reduced the height of the main floor and required
      the elimination of windows and reduced the size and quantity of windows. This
      change substantially reduces the market value of the home.

Moreover, Fulford has allegedly refused to repair numerous punch list items, including cracked rock pillars, electrical issues, paint damages on the main floor, and three exterior doors that were hung/installed incorrectly resulting in improper seal from outside elements. Specifically, "Fulford Homes' defective work caused a substantial delay in completing construction of the Haines' house, resulting in out-of-pocket expenses and other compensatory damages, including loss of use."

The Haineses assert a total of five (5) counts: (1) Breach of Contract against Fulford; (2) Breach of Covenant of Good Faith and Fair Dealing against Fulford; (3) Negligence against Fulford and MSO; (4) violation of § 70-19-426, MCA, *et seq.*[2] against Fulford and MSO; and (5) Negligent Misrepresentation against Fulford. The Haineses pray for a judgment against Fulford and MSO, damages in an amount to be determined at trial, costs and expenses available under Montana law, attorney's fees, and interest available under Montana law.

**2.**    **REQUEST FOR DOCUMENTS**

Nautilus is still investigating this claim. To assist with this investigation, **we request that Fulford provide us with copies of any other commercial general liability, professional liability, or any applicable policy of insurance whereby Fulford may be a named insured or an additional insured.**

**3.**    **THE POLICIES**

Nautilus issued the following policies to named insured "MSO Construction LLC":

    1.  Policy No. NC862602, effective from January 22, 2019 to January 22, 2020 (the "2019 Policy"); and

    2.  Policy No. NN1087368, effective from January 22, 2020 to January 22, 2021 (the "2020 Policy; collectively, the 2019 Policy and the 2020 Policy are the "Policies").

The Policies include a "Commercial General Liability Coverage Form," written on form number CG 00 01 04 13 (the "CGL Coverage Form"). The CGL Coverage Form in the 2019 Policy provides an each occurrence limit of $300,000. The 2020 Policy includes an "Amendment of Limits of Insurance" endorsement, written on form number CG 25 02 07 98, which modifies the limits under the CGL Coverage Form in the 2020 Policy only (the "Limits Endorsement").

---

[2] These code sections are part of the Montana Construction Defect Act related to residential construction disputes.



**SELMAN**

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 6

Pursuant to the Limits Endorsement, the 2020 Policy provides an each occurrence limit of $1,000,000.

4.    **COVERAGE ANALYSIS**

    a.    **Fulford Does Not Qualify As An Insured Or An Additional Insured Under The 2019 Policy; Therefore, Nautilus Disclaims Coverage To Fulford For The Haines Cross Claim Under The 2019 Policy**

The CGL Coverage Form in the 2019 Policy states as follows, in relevant part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

> The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

> …

> **SECTION I – COVERAGES**

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

> **1.  Insuring Agreement**

>     **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages….

> …

> **SECTION II – WHO IS AN INSURED**

> **1.**  If you are designated in the Declarations as:

>     …

>     **c.**  A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

>     …

> **2.**  Each of the following is also an insured:

>     …

>     **b.**  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.'

>     **c.**  Any person or organization having proper temporary custody of your property if you die[.]

3891 100751 4839-0689-3045 .v2



**SELMAN**

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 7

...

> **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.
>
> **3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization....
>
> ...
>
> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Here, the 2019 Policy lists the named insured as "MSO Construction LLC." Fulford is not listed a named insured, nor does Fulford qualify as an "insured" under the potentially applicable provisions referenced above from Section II of the CGL Coverage Form. Furthermore, the 2019 Policy does not include a specific additional insured endorsement for Fulford, nor does it include a blanket additional insured endorsement. Thus, it is clear that Fulford does not qualify as an insured or an additional insured under the 2019 Policy. This was previously conveyed to you and Fulford in the July 2020 Letter, when Nautilus specifically stated as follows as it relates to the 2019 Policy:

> This policy does not name Fulford as an insured or as an additional insured. Further, the policy does not include a blanket additional insured endorsement, and Fulford does not qualify as an insured under the policy's provisions entitled "WHO IS AN INSURED". Thus, Fulford does not qualify as an insured on policy NC862602.

The June 2021 Letter includes a footnote typo stating that "[t]he singular 'policy' refers to all policies referenced in the caption unless specifically indicated otherwise." The caption references the Policies and the June 2021 Letter notes that the "policy incorporates Form CG 20 26 (04/13)," an "Additional Insured – Designated Person or Organization" endorsement. However, nowhere in the June 2021 Letter does it explicitly state that the 2019 Policy includes an additional insured or a blanket additional insured endorsement qualifying Fulford as an additional insured under the 2019 Policy.

Fulford has been provided with complete copies of the Policies and as such, Fulford is well aware that the 2019 Policy does not include or incorporate a "Form CG 20 26 (04/13)" endorsement. The inadvertent comment in the June 2021 Letter referring "to all policies referenced in the caption unless specifically indicated otherwise" does not supersede the specific language cited above and stated in the July 2020 Letter, wherein it was made abundantly clear that Fulford does not qualify as an insured or additional insured under the 2019 Policy. Moreover, the footnote in the June 2021 Letter does not supersede the actual contents of the 2019 Policy, nor is there any conceivable



# SELMAN

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 8

argument that Fulford could have relied on the footnote to its detriment as the tender was denied in the June 2021 Letter.

Therefore, it is clear that Fulford does not qualify as an insured or an additional insured under the 2019 Policy. Accordingly, Nautilus disclaims coverage to Fulford under the 2019 Policy for the Haines Cross Claim.

**b.    Nautilus Agrees To Defend Fulford Against The Haines Cross Claim Under The 2020 Policy, Subject To A Reservation Of Rights**

The CGL Coverage Form in the 2020 Policy states as follows, in relevant part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

### SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**2. Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any "suit" that may result….
>
> …
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> > **(1)** The "bodily injury" or "property damage" is caused by an occurrence" that takes place in the "coverage territory";
> >
> > **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
> >
> > **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or



SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 9

resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee "authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" "or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage'; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

The CGL Coverage form in the 2020 Policy contains the following relevant definitions:

**SECTION V – DEFINITIONS**

...

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

...

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cased it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

...

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which damages are claimed and to which the insured must submit or does submit with our consent; or



**SELMAN BREITMAN LLP**

Mr. Jason A. Williams
September 1, 2021
Page 10

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

As referenced above, the 2020 Policy also includes an "Additional Insured – Designated Person or Organization" endorsement, written on form number CG 20 26 04 13 (the "AI Endorsement"), which states as follows:

### ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| Butler Creek Development, 4800 Grant Creek Rd, Missoula, MT, 59808<br><br>Fulford Homes, 262 Jamie Ct, Missoula, MT, 59802<br><br>Reed Mountain Construction, Inc, 1333 Juniper lane, Alberton, MT 59820 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

    **1.** In the performance of your ongoing operations; or

    **2.** In connection with your premises owned by or rented to you.

However:

    **1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

    **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance**:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    **1.** Required by the contract or agreement; or



SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 11

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

    *i.*     <u>*Nautilus Reserves All Rights Under The Coverage A Insuring Agreement In The 2020 Policy's CGL Coverage Form*</u>

The Haineses assert vague contentions potentially amounting to allegations of "property damage." As such, the allegations in the Haines Cross Claim appear to be sufficient to trigger a duty to defend under the CGL Coverage Form's Coverage A Insuring Agreement in the 2020 Policy, subject to Nautilus's reservation of rights as set forth in this letter and under Montana law.

More specifically, Nautilus reserves the right to disclaim coverage for the Haines Cross Claim to the extent that the Haineses' allegations do not constitute an "occurrence" or "property damage" under the 2020 Policy. The Haines Cross claim asserts numerous allegations regarding the defective construction of their home, as well as Fulford's unwillingness to remedy defective and/or deficient construction. Thus, Nautilus reserves the right to disclaim coverage for this matter to the extent that the Haines Cross Claim allegations of defective construction do not amount to an "occurrence" and/or "property damage" under the 2020 Policy.

Furthermore, the Subcontractor Agreement was entered into on or about May 6, 2019, yet the 2020 Policy did not become effective until January 22, 2020. The Haines Cross Claim does not specifically state when the alleged "occurrence" and/or "property damage" occurred, nor does it state when MSO and/or Fulford first became aware of the alleged "property damage." Therefore, Nautilus reserves all rights under the CGL Coverage Form's Coverage A Insuring Agreement in the 2020 Policy, including the right to disclaim coverage for the Haines Cross Claim to the extent that: (1) the alleged "occurrence" took place before the 2020 Policy became effective; and/or (2) MSO and/or Fulford received notice of the alleged "occurrence" and/or "property damage" prior to the inception of the 2020 Policy.

    *ii.*     <u>*Nautilus Reserves All Rights Under The AI Endorsement*</u>

As noted above, the terms of the AI Endorsement make clear that Fulford is an additional insured under the 2020 Policy "only with respect to liability for…"property damage"…caused, in whole or in part, by [MSO's] acts or omissions or the acts or omissions of those acting on [MSO's] behalf…[i]n the performance of [MSO's] ongoing operations." The Haines Cross Claim does not allege when MSO's ongoing operations on the construction of the Haineses' home terminated. Therefore, Nautilus reserve the right to disclaim coverage for the Haines Cross Claim to the extent that the alleged "property damage" occurred after the completion of MSO's ongoing operations related to the construction of the Haineses' home. Nautilus also reserves the right to disclaim coverage to the extent that the alleged "property damage" was caused entirely by Fulford in the



**SELMAN BREITMAN LLP**

Mr. Jason A. Williams
September 1, 2021
Page 12

performance of MSO's ongoing operations, thus precluding Fulford from coverage under the AI Endorsement.

> iii. *Nautilus Reserves All Rights Under The 2020 Policy's CGL Coverage Form Coverage A Property Damage Exclusions*

The CGL Coverage Form in the 2020 Policy includes the following property damage exclusions relevant to Coverage A (the "Property Damage Exclusions"):

**2. Exclusions**

This insurance does not apply to:

…

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization, or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

…

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**



**SELMAN BREITMAN LLP**

Mr. Jason A. Williams
September 1, 2021
Page 13

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The CGL Coverage Form in the 2020 Policy also includes the following relevant definitions:

### SECTION V – DEFINITIONS

...

**8.** "Impaired property "means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement.

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

...

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if our contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.



**SELMAN**

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 14

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that product-completed operations are subject to the General Aggregate Limit.

   …

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

The Haineses contend that Fulford and/or MSO constructed their home in a defective manner in breach of the contractual agreement entered into between Fulford and the Haineses. For example, the Haineses state, among other things, that plumbing leaks in the master bathroom sink caused damage to the cabinet(s). As a result of the allegedly deficient construction, repairs and/or replacements are apparently needed throughout the home. Accordingly, Nautilus reserves all rights under the above-referenced Property Damage Exclusions in the 2020 Policy.

    *iv.*    *Nautilus Reserves All Rights Under The 2020 Policy's Professional Services Exclusion*

The 2020 Policy includes an endorsement entitled, "Exclusion – Professional Services – Contractors, Engineers, Architects, Surveyors and Construction Management," written on form number L219 (04/16) (the "Professional Services Exclusion"), which states as follows:

   **EXCLUSION – PROFESSIONAL SERVICES – CONTRACTORS, ENGINEERS, ARCHITECTS, SURVEYORS AND CONSTRUCTION MANAGEMENT**

    This endorsement modifies insurance provided under the following:

       COMMERCIAL GENERAL LIABILITY COVERAGE PART

3891 100751 4839-0689-3045 .v2



**SELMAN**

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 15

The following exclusion is **added** to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability** and **Coverage C – Medical Payments:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of the rendering of or failure to render any professional services by you or on your behalf.

Professional services include:

**a.** Any error, omission, defect or deficiency in any test performed; or

**b.** Any evaluation, consultation or advice; or

**c.** The reporting of or reliance upon any such test, evaluation, consultation or advice; or

**d.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs, or drawings and specifications; or

**e.** Supervisory, inspection, or quality control activities performed as part of any related architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offenses which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

Nautilus reserves all rights under the Professional Services Exclusion with respect to the Haines Cross Claim.

    *v.*    <u>*Nautilus Reserves All Rights Under The 2020 Policy's Contractors And Subcontractors Exclusion*</u>

The 2020 Policy includes an endorsement entitled "Exclusion – Contractors and Subcontractors," written on form number L282 (07/10) (the "Contractors Exclusion"), which states as follows:

**EXCLUSION – CONTRACTORS AND SUBCONTRACTORS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to **2. Exclusion** of **Section I – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability** and **Coverage C – Medical Payments:**

This insurance does not apply to…"property damage"…arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.



**SELMAN**

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 16

Nautilus reserves all rights under the Contractors Exclusion with respect to the Haines Cross Claim.

     *vi.*    *Nautilus Reserves All Rights Under The 2020 Policy's Exclusion For Continuous Or Progressive Damage*

The 2020 Policy includes an endorsement entitled "Exclusion – Continuous or Progressive Damage," written on form number L342 (09/16) (the "Continuous or Progressive Damage Exclusion"), which states as follows:

**EXCLUSION – CONTINUOUS OR PROGRESSIVE DAMAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to **2. Exclusions** of **Coverage A – Bodily Injury And Property Damage Liability**:

**1.** This insurance does not apply to "property damage":

    **a.** That first occurs, or is alleged to first occur, prior to the effective date of this policy; or

    **b.** That first occurs, or is alleged to first occur, prior to the effective date of this policy and continue during this policy period.

**2.** We will have no duty to defend any insured against any loss, claim, "suit" or other proceeding seeking damages for "property damage" to which this endorsement applies.

The Subcontractor Agreement was entered into on or about May 6, 2019. The 2020 Policy became effective on January 22, 2020. The Haines Cross Claim does not specify when the construction on the Haineses property was completed, nor does it specify dates related to any alleged "occurrence" or "property damage." Therefore, Nautilus reserves all rights under the Continuous or Progressive Damage Exclusion.

     *vii.*    *Nautilus Disclaims Coverage For Any Award Of Attorneys' Fees Under The 2020 Policy*

The "Supplementary Payments" section of the CGL Coverage Form in the 2020 Policy states as follows, in relevant part:

**SUPPLEMENTARY PAYMENTS – COVERAGE A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    …



**SELMAN**

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 17

     **e.** All court cost taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

To the extent that MSO and/or Fulford are deemed to be liable for any attorneys' fees and/or expenses related to the Haines Cross Claim, Nautilus disclaims coverage for those fees and/or expenses under the Supplementary Payments section of the 2020 Policy's CGL Coverage Form.

**5.**    **CONCLUSION**

Nautilus will defend Fulford against the Haines Cross Claim subject to a reservation of all rights that Nautilus has to deny any obligations to Fulford based on the insuring language, exclusions, definitions, conditions, and endorsements set forth in the Policies. Nautilus also specifically reserves the following rights with respect to this matter to the extent allowed under Montana law:

1. The right to file a declaratory relief action to seek a judicial determination of the parties' rights and obligations under the Policies;

2. The right to apportion fees and costs between covered and non-covered claims;

3. The right to seek reimbursement for any fees and costs paid to defend against non-covered allegations, claims, and/or causes of action, to the extent permitted by applicable state law;

4. The right to deny a defense to the extent the allegations and/or damages fall outside the scope of coverage afforded by the Policies;

5. The right to deny indemnification to the extent the allegations and/or damages fall outside the scope of coverage afforded by the Policies;

6. The right to seek reimbursement for any judgment or settlement paid pursuant to the reservations stated herein;

7. The right to withdraw from the defense; and

8. The right to amend and/or supplement this reservation of rights letter.

Nothing in this letter should be read as a waiver of any rights under the Policies or applicable law. The inclusion of policy terms, conditions, definitions, exclusions, and/or endorsements in this letter is not intended as, and it is not, an exhaustive recitation of the Policies' terms, conditions, exclusions, or endorsements that may potentially apply to Nautilus's coverage determination under the Policies. Moreover, no action taken in connection with the investigation or handling of this matter should be deemed as an admission of coverage under the Policies.



**SELMAN**

SELMAN BREITMAN LLP

Mr. Jason A. Williams
September 1, 2021
Page 18

Please note that the coverage position set forth in this letter is based on information currently available to Nautilus. Nautilus will review its coverage position under the Policies if additional documentation, factual information, or legal authority is submitted. Nautilus reserves the right to reevaluate its entire coverage position under the Policies, not merely those portions of its coverage position that may be affected by such additional documentation, information, or legal authority.

If you disagree with the Nautilus's coverage position herein, you are entitled to have the matter reviewed by the Office of the Montana State Auditor, Commissioner of Securities and Insurance. The address, telephone number, and website are:

Office of the Montana State Auditor,
Commissioner of Securities and Insurance
840 Helena Ave.
Helena, MT 59601
(800) 332-6148 or (406) 444-2040
www.csimt.gov

If you have any questions regarding the matters discussed in this letter, please contact the undersigned.

Very truly yours,

*Linda Wendell Hsu*

LINDA WENDELL HSU

LWH:sel

cc:     (Via email)
        Shelly Brander: sfb@kvhlaw.com
        Lucas Mann: lucas@kvhlaw.com
        Sam Lipsitz: slipsitz@selmanlaw.com



# SELMAN

**SELMAN BREITMAN LLP**

33 New Montgomery, Sixth Floor
San Francisco, CA 94105-4537
Telephone: 415.979.0400
Facsimile: 415.979.2099
www.selmanlaw.com

Linda Wendell Hsu
415.979.2024
lhsu@selmanlaw.com

October 27, 2021

**Via Email: jwilliams@dmllaw.com**

Mr. Jason A. Williams
Datsopoulos, MacDonald & Lind, P.C.
Central Square Building
201 W. Main Street, Suite 201
Missoula, MT 59802

Re:    *MSO Construction LLC v. Fulford Homes, et al.*
       Court & Case No.   :  Missoula County, MT, Case No. DV-32-2020-000087-BC
       Our File No.      :  3891.100751
       Insured           :  MSO Construction LLC
       Date of Loss     :  10/29/2019
       Claim No.        :  N000010109364
       Policy No.       :  NN1087368 (January 22, 2020 – January 22, 2021)

Dear Mr. Williams:

As you know, our firm has been retained as coverage counsel for Nautilus Insurance Company ("Nautilus") as it pertains to the above-referenced action. On September 1, 2021, Nautilus provided you with correspondence advising that it was agreeing to defend your client, Fulford Homes, LLC ("Fulford"), in the above-referenced matter under a full and complete reservation of rights (the "ROR Letter"). In the ROR Letter, Nautilus also agreed to reimburse Fulford for defense costs incurred, **only as it relates to the defense of the cross claim filed against Fulford by Nathan and Jody Haines** (the "Haines Cross Claim"), from the date of Nautilus's prior coverage correspondence to Fulford dated June 8, 2021 (the "June 2021 Letter") to the date of the ROR Letter. Along with this specific agreement to reimburse Fulford, Nautilus further requested that you provide the undersigned with invoice(s) documenting these costs, to the extent these costs existed, as soon as possible.

On September 16, 2021, you responded to the ROR Letter by requesting reimbursement for costs incurred by Fulford prior to the date of the June 2021 Letter (the "Reimbursement Request Letter"). In addition, the Reimbursement Request Letter includes a vague breakdown of tasks apparently performed on Fulford's behalf since the date of the June 2021 Letter; however, the Reimbursement Request Letter did *not* enclose any requested invoice(s) documenting the allegedly incurred costs. As such, Nautilus has asked us to communicate its response to the Reimbursement Request Letter.

Los Angeles  •  San Francisco  •  Orange County  •  San Diego  •  Las Vegas  •  Seattle  •  Portla



3891 100751 4892-1759-1041 .v2



**SELMAN**

SELMAN BREITMAN LLP

Jason A. Williams
October 27, 2021
Page 2

### 1.    THE REIMBURSEMENT REQUEST LETTER

In the Reimbursement Request Letter, you state that you "are still requesting the full amount of hours spent on defending this case in regards to the MSO issue and obtaining the defense of Nautilus pursuant to the parties [sic] agreement." On top of the specific costs for which Nautilus has agreed to reimburse Fulford– which, again, are **incurred defense costs only relating to the defense of the Haines Cross Claim** – you have requested "approximately $10,000 in attorney fees and $760 in costs that were incurred prior to [your] June 3, 20201, letter."

You also state that, "without waiving [your] request for full indemnification, [you] have provided a breakdown of [your] additional hours for defending the issues that have arose from work provided by MSO," as follows:

> Since June 8, 2021, Fulford Homes has incurred an additional 28.6 hours of work that included the preparation and participation of the deposition of Fulford Homes on August 30, 2021. Preparation and participation of the deposition of MSO's principal Dave Ferdinand. Discovery response preparation and coordination with Fulford Homes. Discovery drafting and follow up. Discussion with co-counsel regarding the strategy for the case and additional deponents and experts. Review of documents and discovery responses of the other parties.

The Reimbursement Request Letter further states that with your hourly rate of $200/hour, "[t]his would equate to the payment of $5,720 for the work of Datsopoulos MacDonald & Lind in defense of the claims as a result of MSO's work from June 8, 2021, to present date." You also claim that "[t]here were additional hours that were related to other aspects of the case that are not pertinent to the defense of Fulford Homes as a result of MSO's work and as such those hours were not included in this calculation."

### 2.    NAUTILUS'S RESPONSE TO THE REIMBURSEMENT REQUEST LETTER

"Montana law is well-settled that an insurer's duty to defend its insured arises when an insured sets forth facts which represent a risk covered by the terms of an insurance policy." *Farmers Union Mut. Ins. Co. v. Staples*, 321 Mont. 99, 105 (2004). Thus, it follows that an insurer has no duty to pay for defense costs incurred by an insured related to a risk that is *not* covered by the terms of the insurance policy. Given that the duty to defend "can arise when the insurer receives notice of a covered risk," authority from Montana's highest court also supports the contention that an insurer has no duty to pay for pre-tender defense costs. *See Tidyman's Mgmt. Servs. Inc. v. Davis*, 376 Mont. 80, 93 (2014).

Here, as advised in the ROR Letter, Nautilus provided you with correspondence dated July 9, 2020 advising that it was rejecting Fulford's request for contractual liability coverage sought against Nautilus's named insured, MSO Construction LLC (the "Insured" or "MSO"). Subsequently, on



**SELMAN**

SELMAN BREITMAN LLP

Jason A. Williams
October 27, 2021
Page 3

June 3, 2021, you sent a request to MSO's counsel "pursuant to the contractual agreement entered into between MSO and Fulford Homes for indemnification and defense of the" Haines Cross Claim (the "Haines Cross Claim Tender"). Nautilus was then provided with a copy of the Haines Cross Claim Tender. In the June 2021 Letter, Nautilus advised that, at that time, it was rejecting any request for defense or indemnification pursuant to a contractual liability theory, under MSO's policies, as it related to the Haines Cross Claim. Nautilus also advised in the June 2021 Letter that its coverage position could be reconsidered.

As subsequently clarified in the ROR Letter, the Haines Cross Claim "assert[s] vague contentions potentially amounting to allegations of 'property damage'"; thus, "the allegations in the Haines Cross Claim appear to be sufficient to trigger a duty to defend under the CGL Coverage Form's Coverage A Insuring Agreement in the 2020 Policy, subject to Nautilus's reservation of rights as set forth in [the ROR Letter] and under Montana law." As made clear in the ROR Letter, Fulford had not set forth facts which represented a risk potentially covered under MSO's 2020 Policy until Nautilus was provided with a copy of the Haines Cross Claim. Accordingly, Nautilus has no obligation to reimburse Fulford for the "approximately $10,000 in attorney fees and $760 in costs that were incurred prior to [your] June 3, 20201, letter."

With that being said, Nautilus reiterates its agreement to reimburse Fulford for defense costs incurred, **only as it relates to the defense of the Haines Cross Claim**, from the date of the Haines Cross Claim Tender[1] to the date of the ROR Letter. In order to remit a reimbursement payment to Fulford, Nautilus specifically noted in the ROR Letter that the invoice(s) documenting these costs needed to be provided to Nautilus as soon as possible. Although the Reimbursement Request Letter provides a general description of services purportedly performed as the basis of the request for payment of $5,720, no invoices or billing statements were enclosed. <u>Accordingly, to the extent that Fulford incurred defense costs during the timeframe referenced above, please provide me with the invoice(s) documenting these costs as soon as possible.</u> Upon receipt, I will forward the same to Nautilus for review, along with the W-9 you enclosed with the Reimbursement Request Letter.

3.   <u>**REITERATED REQUEST FOR DOCUMENTS**</u>

Nautilus is still investigating this claim. To assist with this investigation and follow up from the original request in the ROR Letter, **Nautilus again requests that Fulford provide us with copies of any other commercial general liability, professional liability, or any applicable policy of insurance whereby Fulford may be a named insured or an additional insured.** If no such policy(ies) exist, please confirm so in writing when you provide the requested invoice(s).

---

[1] In the ROR Letter, Nautilus advised that it would reimburse Fulford for defense costs incurred solely relating to the defense of the Haines Cross Claim from the date of the June 2021 Letter – June 8, 2021 – to the date of the ROR Letter. Even though the Haines Cross Claim Tender was not sent to Nautilus, but rather directly to the Insured's retained defense counsel, Nautilus is willing to agree, as a courtesy, that the relevant reimbursement timeframe will begin on June 3, 2021.



**SELMAN BREITMAN LLP**

Jason A. Williams
October 27, 2021
Page 4

4.    **CONCLUSION**

Nautilus will continue to defend Fulford against the Haines Cross Claim subject to a reservation of all rights set forth in the ROR Letter. Nothing in this letter should be read as a waiver of any rights under MSO's policies or applicable law. Moreover, no action taken in connection with the investigation or handling of this matter should be deemed as an admission of coverage under MSO's policies.

We look forward to receiving copies of the requested invoice(s), as well as a copy of any policy of insurance requested above, to the extent they exist. If you have any questions regarding the matters discussed in this letter, please contact the undersigned.

Very truly yours,

*Linda Wendell Hsu*

LINDA WENDELL HSU

LWH:sel

cc:    (Via email)
       Sam Lipsitz: slipsitz@selmanlaw.com





April 6, 2023

**_Via Email & U.S. Mail_**
William K. VanCanagan
Datsopoulos, MacDonald & Lind, P.C
201 W. Main St. #201
Missoula, MT 59802
bvancanagan@DMLlaw.com

**_Via Email & U.S. Mail_**
Thomas Whalen
722 W. Badger Lane
Butte, MT 59701
twhalen102040@gmail.com

- Re: *Shareholder's Request for Corporate Records: Whalen Holdings, Inc., Whalen Holdings Montana, Inc., Whalen Holdings Dillon, Inc., Whalen Holdings Billings Inc., Whalen Holdings Lockwood, Inc., Whalen Holdings Spokane, Inc.*

Dear Sirs:

I represent Tamara Murock. Ms. Murock is a shareholder in each one of the above corporations. I write to you in your capacity as the attorney and registered agent[1] for each of these companies (Mr. VanCanagan) and as the president of each of them (Mr. Whalen).

My client hereby invokes her inspection rights as to each of these corporations under M.C.A. § 35-14-1602. Specifically, my client wants to inspect and copy, as to each of the above-listed corporations:

1.    The records described in M.C.A. § 35-14-1602(1), to wit:

- The articles of incorporation currently in effect.
- Any notices to shareholders described in M.C.A. § 35-14-1601(1)(b).
- The bylaws currently in effect.
- All written communications within the past three years to shareholders generally.
- All minutes of all meetings of and records of all actions taken without a meeting by its shareholders.
- A list of the names and business addresses of the current directors and officers.
- It's most recent annual report.

In addition, pursuant to M.C.A. § 35-14-1602(2), Ms. Murock invokes her right to inspect

---

[1] I realize Mr. VanCanagan is not the registered agent for Whalen Holdings Spokane, Inc. However, I am informed that he is counsel for that company.

William K. VanCanagan
Thomas Whalen
April 6, 2023
Page 2

and copy the following documents:

- The financial statements the corporation maintained in accordance with M.C.A §
35-14-1601(2).
- The accounting records of the corporation.
- Minutes of the meeting of or records of any actions taken without a meeting by the
corporations board of directors and board committees as maintained by the
corporation in accordance with M.C.A. § 35-14-1601(1).
- The record of shareholders in accordance with M.C.A. § 35-14-1601(4).

As to the records described in the list immediately preceding this paragraph, Ms.
Murock's purpose is to allow her to evaluate the value of her interest in the corporation,
including how certain actions by those in control of the corporation have effected the value of her
shares, including the sale of the assets, a purported settlement agreement releasing claims against
those who are or may have been indebted to the corporation, and otherwise. It is also for purpose
of allowing her to calculate the value of her appraisal rights as to the corporations.

Ms. Murock believes the foregoing description adequately describes with reasonable
particularity the records Ms. Murock desires to inspect. Nonetheless, to provide additional
clarity, she wishes to inspect year end financial statements for the years ending 2020, 2021, and
2022, as well as any year-to-date financial statements for 2023 through the date of her request.
This includes balance sheets and profit and loss statements.

Pursuant to M.C.A. § 35-14-1603, Ms. Murock has appointed me, my staff, and any other
persons whom I may elect to accompany me (for instance, an accountant) as her agent(s) to
exercise her inspection and copying rights under M.C.A. § 35-14-1602. *See* M.C.A. § 35-14-
1603(1).

Ms. Murock is receptive to receiving these documents in PDF format via upload to a
Sharefile link that I can provide to you. Please advise if the corporation wishes to comply in that
manner.

Under the statutes, of course, the corporations are entitled to five business days prior
notice before the inspection date. Ideally, we would be able to inspect in advance of the
shareholders' meeting scheduled for Thursday April 13. I recognize that there are not five full
business days between now and then. Ms. Murock would appreciate it if you could provide the
documents requested as soon as possible in electronic format as requested above. If not, we will
work with you to agree upon a day for an actual physical inspection, on a mutually agreeable day.

I look forward to your response.

William K. VanCanagan
Thomas Whalen
April 6, 2023
Page 3

Sincerely,

Robert K. Baldwin

RKB:njw

## APPOINTMENT

I, Tamara Murock, hereby appoint my attorney, Robert K. Baldwin, and his staff and/or experts, to exercise my shareholder inspection and copying rights as stated in the foregoing letter.

04/06/2023

Tamara Murock

citrix | RightSignature



**REFERENCE NUMBER**
D2908F77-246E-493C-B71C-8EDFBAE674D4

# SIGNATURE CERTIFICATE

## TRANSACTION DETAILS

**Reference Number**
D2908F77-246E-493C-B71C-8EDFBAE674D4

**Transaction Type**
Signature Request

**Sent At**
04/06/2023 19:06 EDT

**Executed At**
04/06/2023 19:13 EDT

**Identity Method**
email

**Distribution Method**
email

**Signed Checksum**
cf85d0def2e6c91522a9d2a43dc47d1bd8de3ec537a0b67f3c75a4c638b5fb95

**Signer Sequencing**
Disabled

**Document Passcode**
Disabled

## DOCUMENT DETAILS

**Document Name**
2023-04-06 Ltr Baldwin-Baker Records Request

**Filename**
2023-04-06_ltr_baldwin-baker_records_request_.pdf

**Pages**
3 pages

**Content Type**
application/pdf

**File Size**
662 KB

**Original Checksum**
777bfd47a55afd5a2ef9f0ca079c9a1b4a4f2765908df6acd1f9f6056a64dd37

# SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>Tamara Murock | **Status**<br>signed | **Viewed At**<br>04/06/2023 19:08 EDT |
| **Email**<br>tmurock@murocklaw.com | **Multi-factor Digital Fingerprint Checksum**<br>d803bbc21dfbc5e0d0cacfa6cfe199de72700af04f78a4ce2745950290d07ee6 | **Identity Authenticated At**<br>04/06/2023 19:13 EDT |
| **Components**<br>2 | **IP Address**<br>174.234.10.120 | **Signed At**<br>04/06/2023 19:13 EDT |
| | **Device**<br>Chrome Mobile via Android | |
| | **Drawn Signature** | |
| | *Tamara B Murock* | |
| | **Signature Reference ID**<br>DBC6788A | |
| | **Signature Biometric Count**<br>5 | |

# AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 04/06/2023 19:06 EDT | Nicholas White (nwhite@baldwinlawfirm.com) created document '2023-04-06_ltr_baldwin-baker_records_request_.pdf' on Microsoft Edge via Windows from 69.144.240.186. |
| 04/06/2023 19:06 EDT | Tamara Murock (tmurock@murocklaw.com) was emailed a link to sign. |
| 04/06/2023 19:06 EDT | Nicholas White (nwhite@baldwinlawfirm.com) shared document '2023-04-06_ltr_baldwin-baker_records_request_.pdf' on Microsoft Edge via Windows from 69.144.240.186. |
| 04/06/2023 19:06 EDT | Nicholas White (nwhite@baldwinlawfirm.com) shared document '2023-04-06_ltr_baldwin-baker_records_request_.pdf' on Microsoft Edge via Windows from 69.144.240.186. |
| 04/06/2023 19:07 EDT | Tamara Murock (tmurock@murocklaw.com) viewed the document on Chrome Mobile via Android from 174.234.10.120. |

from 174.234.10.120.

04/06/2023 19:13 EDT       Tamara Murock (tmurock@murocklaw.com) authenticated via email on Chrome Mobile via Android from 174.234.10.120.

04/06/2023 19:13 EDT       Tamara Murock (tmurock@murocklaw.com) signed the document on Chrome Mobile via Android from 174.234.10.120.

**Jason Williams**

| | |
|---|---|
| **From:** | Jowers, Tracy <tjowers@nautilus-ins.com> |
| **Sent:** | Thursday, November 11, 2021 10:40 AM |
| **To:** | Tom Mahlen |
| **Cc:** | Danielle Principe; John Wright; Jason Williams; Nyles Greer |
| **Subject:** | RE: Our File: 23733; N000010120143  MSO Construction LLC v. Joe Fulford dba Fulford Homes, LLC, Nathan Haines and Jody Haines  [EXTERNAL] |

Tom,

I apologize for the late response.  Although we insured MSO Construction LLC, they are not a party to the matter.  If MSO is joined, we will then split the file to another adjuster.



**Tracy Jowers | Senior Examiner**
Nautilus Insurance Group (a Berkley Company)
7233 East Butherus Drive, Scottsdale, AZ 85260
Phone: 480.509.6857 | Fax: 480.281.0826
E-mail: tjowers@nautilus-ins.com | Web site: www.nautilusinsgroup.com

---

**From:** Tom Mahlen <tmahlen@hglaw.net>
**Sent:** Tuesday, November 2, 2021 11:35 AM
**To:** Jowers, Tracy <tjowers@nautilus-ins.com>
**Cc:** Danielle Principe <dprincipe@hglaw.net>; John Wright <jwright@hglaw.net>; 'Jason Williams' <jwilliams@dmllaw.com>; Nyles Greer <ngreer@hglaw.net>
**Subject:** RE: Our File: 23733; N000010120143 MSO Construction LLC v. Joe Fulford dba Fulford Homes, LLC, Nathan Haines and Jody Haines [EXTERNAL]
**Importance:** High

** CAUTION: External message

Thanks Tracy.  Your insured, as I understand it, is a party (MSO).  Can this file be split?  Is your manager involved with the MSO claim?  We need a full partition between any information associated with these two files for obvious reasons.

Sincerely,

Tom

Thomas L. Mahlen, Jr.
Halverson, Mahlen & Wright, P.C.
1001 South 24th Street West
Creekside Suite 301
P.O. Box 80470
Billings, MT 59108-0470
Phone 406-652-1011

1



Fax 406-652-8102
tmahlen@hglaw.net

---

**From:** Jowers, Tracy <tjowers@nautilus-ins.com>
**Sent:** Tuesday, November 2, 2021 9:24 AM
**To:** Tom Mahlen <tmahlen@hglaw.net>
**Cc:** Danielle Principe <dprincipe@hglaw.net>; John Wright <jwright@hglaw.net>; 'Jason Williams' <jwilliams@dmllaw.com>; Nyles Greer <ngreer@hglaw.net>
**Subject:** RE: Our File: 23733; N000010120143 MSO Construction LLC v. Joe Fulford dba Fulford Homes, LLC, Nathan Haines and Jody Haines [EXTERNAL]

Good morning Tom.

Any updates obtained are not shared with our policy holder or their agents.  The reports are available to my immediate supervisor.  If that presents a problem, please let me know.

If our insured was joined in the matter, we would have the file split to another adjuster in another claims unit at Nautilus, keeping the matters separate.

Should you have any additional concerns, please let me know.



**Tracy Jowers | Senior Examiner**
Nautilus Insurance Group (a Berkley Company)
7233 East Butherus Drive, Scottsdale, AZ 85260
Phone: 480.509.6857 | Fax: 480.281.0826
E-mail: tjowers@nautilus-ins.com | Web site: www.nautilusinsgroup.com

---

**From:** Tom Mahlen <tmahlen@hglaw.net>
**Sent:** Monday, November 1, 2021 3:55 PM
**To:** Jowers, Tracy <tjowers@nautilus-ins.com>
**Cc:** Danielle Principe <dprincipe@hglaw.net>; John Wright <jwright@hglaw.net>; 'Jason Williams' <jwilliams@dmllaw.com>; Nyles Greer <ngreer@hglaw.net>
**Subject:** Our File: 23733; N000010120143 MSO Construction LLC v. Joe Fulford dba Fulford Homes, LLC, Nathan Haines and Jody Haines [EXTERNAL]
**Importance:** High

** CAUTION: External message

Dear Tracy:

Thanks for your email.  I have included Mr. Fulford's personal counsel on this email.  We are putting the finishing touches on an initial report covering the current status of this case.

In light of the unique circumstances of this file, wherein Fulford (our client) is being defended by an insurer for his opponent, MSO, please advise what systems are in place to prevent any protected or privileged information we provide

you from being accessed by, or disseminated to, anyone else outside our community of interest. Please confirm any such information we provide to you will not be made available to anyone else at Nautilus or to MSO, and that it will be regarded as privileged consistent with the attached Montana case law, *In re Rules* and *American Zurich Insurance.*

If you have any questions, just let me know.

Sincerely,

Tom


Thomas L. Mahlen, Jr.
Halverson, Mahlen & Wright, P.C.
1001 South 24th Street West
Creekside Suite 301
P.O. Box 80470
Billings, MT 59108-0470
Phone 406-652-1011
Fax 406-652-8102
tmahlen@hglaw.net

---

**From:** Jowers, Tracy <tjowers@nautilus-ins.com>
**Sent:** Friday, October 29, 2021 11:47 AM
**To:** Tom Mahlen <tmahlen@hglaw.net>
**Subject:** RE: New Attorney Assignment / N000010120143 MSO Construction LLC v. Joe Fulford dba Fulford Homes, LLC, Nathan Haines and Jody Haines [EXTERNAL]

Hello Tom,

Please provide an update for the above referenced matter.

Thank you.


 **Tracy Jowers | Senior Examiner**
Nautilus Insurance Group (a Berkley Company)
7233 East Butherus Drive, Scottsdale, AZ 85260
Phone: 480.509.6857 | Fax: 480.281.0826
E-mail: tjowers@nautilus-ins.com | Web site: www.nautilusinsgroup.com


CONFIDENTIALITY NOTICE: This e-mail and the transmitted documents contain private, privileged and confidential information belonging to the sender. The information therein is solely for the use of the addressee. If your receipt of this transmission has occurred as the result of an error, please immediately notify us so we can arrange for the return of the documents. In such circumstances, you are advised that you may not disclose, copy, distribute or take any other action in reliance on the information transmitted.
CONFIDENTIALITY NOTICE: This e-mail and the transmitted documents contain private, privileged and confidential information belonging to the sender. The information therein is solely for the use of the addressee. If your receipt of this transmission has occurred as the result of an error, please immediately notify us so we can arrange for the return of the

documents. In such circumstances, you are advised that you may not disclose, copy, distribute or take any other action in reliance on the information transmitted.

**Jason Williams**

| | |
|---|---|
| **From:** | Tom Mahlen <tmahlen@hglaw.net> |
| **Sent:** | Wednesday, February 9, 2022 1:08 PM |
| **To:** | Jason Williams; Joe Fulford |
| **Cc:** | Traci Berlinger |
| **Subject:** | Confidential 23733 - MSO, Haines Fulford |
| | |
| **Importance:** | High |

Gentlemen,

Tracy Jowers, the adjuster handling this file at Nautilus, just told me over the phone that she will not have authority tomorrow at the mediation, because the adjuster assigned to MSO's defense will have the authority.  She confirmed Nautilus will negotiate on behalf of Fulford for damages attributable to MSO, but not solely attributable to Fulford.

This surprises me.

I mentioned your letter yesterday, Jason.

Tracy is going to send an email to both of you about this.  Jason, do you have time to discuss today?

Sincerely,

Thomas L. Mahlen, Jr.
Halverson, Mahlen & Wright, P.C.
1001 South 24th Street West
Creekside Suite 301
P.O. Box 80470
Billings, MT 59108-0470
Phone 406-652-1011
Fax 406-652-8102
tmahlen@hglaw.net



EXHIBIT
G

**Jason Williams**

| | |
|---|---|
| **From:** | Jowers, Tracy <tjowers@nautilus-ins.com> |
| **Sent:** | Wednesday, February 9, 2022 1:34 PM |
| **To:** | Traci Berlinger |
| **Cc:** | Tom Mahlen; Jason Williams; cbsmontana@yahoo.com |
| **Subject:** | RE: 23733 MSO Construction v. Fulford Homes, et al.  [EXTERNAL] |

Good afternoon,

I have reviewed the February 8, 2022 letter from Jason Williams, Esq.

Nautilus has agreed to defend Fulford Homes, not indemnify because they do not quality as an Additional Insured as it relates to their negligent construction.  Any indemnity will be negotiated and/or paid by the adjuster handling on behalf of MSO.

I you have any questions, please feel free to give me a call.



**Tracy Jowers | Senior Examiner**
Nautilus Insurance Group (a Berkley Company)
7233 East Butherus Drive, Scottsdale, AZ 85260
Phone: 480.509.6857 | Fax: 480.281.0826
E-mail: tjowers@nautilus-ins.com | Web site: www.nautilusinsgroup.com

---

**From:** Traci Berlinger <tberlinger@hglaw.net>
**Sent:** Tuesday, February 8, 2022 5:42 PM
**To:** Jowers, Tracy <tjowers@nautilus-ins.com>
**Cc:** Tom Mahlen <tmahlen@hglaw.net>; jwilliams@dmllaw.com; cbsmontana@yahoo.com
**Subject:** 23733 MSO Construction v. Fulford Homes, et al. [EXTERNAL]

** CAUTION: External message

Good afternoon Tracy,

Attached please find a letter of today's date from attorney Jason Williams to Tom for your review in the above-referenced case.

Thank you.

*Traci Berlinger*
**Paralegal**
**Halverson, Mahlen & Wright, P.C.**
**1001 South 24th Street West**
**Creekside Suite 301**

P.O. Box 80470
Billings, MT 59108-0470
Phone: (406) 652-1011
Fax: (406) 652-8102
tberlinger@hglaw.net

CONFIDENTIALITY NOTICE: This e-mail and the transmitted documents contain private, privileged and confidential information belonging to the sender. The information therein is solely for the use of the addressee. If your receipt of this transmission has occurred as the result of an error, please immediately notify us so we can arrange for the return of the documents. In such circumstances, you are advised that you may not disclose, copy, distribute or take any other action in reliance on the information transmitted.

**Jason Williams**

| | |
|---|---|
| **From:** | Jowers, Tracy <tjowers@nautilus-ins.com> |
| **Sent:** | Friday, February 11, 2022 1:52 PM |
| **To:** | Tom Mahlen |
| **Cc:** | Traci Berlinger; Jason Williams; Joe Fulford |
| **Subject:** | RE: Haines/MSO Construction/Fulford Homes mediation; Claim No.: N000010120143; 23733 [EXTERNAL] |

Good afternoon,

As I previously noted, I have no settlement authority.

MSO Construction agreed to defend and indemnify Fulford Homes as an additional insured under the Nautilus policy, but only as it relates to MSO's independent negligence (damages related to foundation, excavation, and/or work MSO performed). Any indemnity payments would come from Matthew Stein at Nautilus.

We did not agree to indemnify Fulford Homes for Fulford's independent negligence (any damages unrelated to MSO's work). Any indemnity for Fulford's negligence should come from Liberty Mutual.

If you need additional clarification on our position, you can contact our coverage counsel, Linda Wendell Hsu, at 415-979-2024.



**Tracy Jowers | Senior Examiner**
Nautilus Insurance Group (a Berkley Company)
7233 East Butherus Drive, Scottsdale, AZ 85260
Phone: 480.509.6857 | Fax: 480.281.0826
E-mail: tjowers@nautilus-ins.com | Web site: www.nautilusinsgroup.com

---

**From:** Tom Mahlen <tmahlen@hglaw.net>
**Sent:** Friday, February 11, 2022 2:21 PM
**To:** Jowers, Tracy <tjowers@nautilus-ins.com>
**Cc:** Traci Berlinger <tberlinger@hglaw.net>; Jason Williams <jwilliams@dmllaw.com>; Joe Fulford <cbsmontana@yahoo.com>
**Subject:** FW: Haines/MSO Construction/Fulford Homes mediation; Claim No.: N000010120143; 23733 [EXTERNAL]
**Importance:** High

** CAUTION: External message

Good Afternoon Tracy.

EXHIBIT
H

1

The case did not resolve yesterday. Please see the mediator's proposal, below, and the attached proposed documents from the mediator. The deadline to respond to the mediator's proposal is **5:00 p.m. MST on Friday, February 18, 2022.**

It is our understanding Nautilus may be willing to pay the $100,000 recommended to be paid on behalf of MSO. It was our understanding yesterday that Liberty Mutual/Ohio Specialty was (at least at that time) only willing to pay $75,000. Given the broad scope of this potential settlement and the risks to all involved, it is our strong recommendation Nautilus take all steps necessary to effectuate this settlement, including but not limited to increasing its present offer so that this mediator's proposal may be accepted on behalf of Fulford.

As a further incentive, significant costs will be incurred to finalize expert disclosure this month, conduct further depositions and start trial prep. We are in the process of invoicing this file for our work since we got involved, and we are amending our initial litigation budget in light of the complexities this case brings.

Sincerely,

Tom

Thomas L. Mahlen, Jr.
Halverson, Mahlen & Wright, P.C.
1001 South 24th Street West
Creekside Suite 301
P.O. Box 80470
Billings, MT 59108-0470
Phone 406-652-1011
Fax 406-652-8102
tmahlen@hglaw.net

---

**From:** Michael Viscomi <viscomi@bigskyattorneys.com>
**Sent:** Thursday, February 10, 2022 6:57 PM
**To:** Marcel A. Quinn <marcelquinn@attorneysmontana.com>; Todd Hammer <toddhammer@attorneysmontana.com>; Shelly Brander <sfb@kvhlaw.com>; Cory Gangle <cgangle@ganglelaw.net>; Jason Williams <jwilliams@dmllaw.com>; Katie Guffin <kguffin@bebtlaw.com>; Tom Mahlen <tmahlen@hglaw.net>
**Cc:** Randi Johnson <randi@bigskyattorneys.com>
**Subject:** Haines/MSO Construction/Fulford Homes mediation

Dear counsel,

Thank you for your hard work today. As you know, the mediation ended with me doing a Mediator's Proposal, the key terms of which are contained in my proposed Settlement Agreement (attached in Word and as a PDF). I recognize, however, that we never did get around to discussing deadlines for payment of the settlement monies, deadlines for MSO Construction's completion of the agreed upon concrete work and I trust said work will require more language in the agreement, or perhaps a separate contract between MSO and Jody and Nathan Haines, setting forth the scope of the concrete work, etc.

As we agreed, please discuss my Mediator's Proposal with your clients and then let me know their "yes" or "no" response by a private email reply. In that regard, we agreed that I will hear back from all three parties no later than **5:00 p.m. MST on Friday, February 18, 2022**. As I advised you, since I will be in Florida for the next several weeks, I might not be able to respond to your emails until the evening or the next day. This will also confirm that I explained to you that this is a triple blind proposal in that three "yes" responses equals a settlement, one or more "no" responses equals an impasse, and whichever party gives me a "no" response will NOT be told how the other parties responded. If I advise you that I received three "yes" responses, I will need one of you to volunteer to take the laboring oar in fielding proposed edits to my proposed Settlement Agreement since I will not be able to do so while I am in Florida.

For all the reasons we discussed today, I believe my settlement proposal represents a good "compromise" in this very complicated case. In addition to the real risk of an adverse verdict and judgment, the costs going forward will obviously be very significant for everyone considering all the necessary remaining depositions, motions, trial preparation, 5-8 day trial and possibly an appeal. Everyone would be very wise to take this opportunity to fully resolve this case at this juncture.

I look forward to your clients' responses and I appreciate the opportunity to have worked with all of you in this mediation.

Michael Viscomi

This electronic mail transmission is confidential and legally privileged and is protected by attorney-client privilege and/or work product. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

Michael A. Viscomi, Esq., VISCOMI, GERSH, SIMPSON & JOOS, PLLP, 121 Wisconsin Avenue, Whitefish, MT 59937 (406) 862-7800
CONFIDENTIALITY NOTICE: This e-mail and the transmitted documents contain private, privileged and confidential information belonging to the sender. The information therein is solely for the use of the addressee. If your receipt of this transmission has occurred as the result of an error, please immediately notify us so we can arrange for the return of the documents. In such circumstances, you are advised that you may not disclose, copy, distribute or take any other action in reliance on the information transmitted.